**UNITED STATES v. CLARK.** \*
No. 5448.

District Court, D. Minnesota, Fourth Division.

Dec. 26, 1931.

\*Affirmed and remanded 61 F.(2d) 695.

Fred Horowitz, Sp. Asst. to Atty. Gen., and L. L. Drill, U. S. Atty., and Robert V. Rensch, Asst. U. S. Atty., both of St. Paul, Minn., for the United States.

Ueland & Ueland and Sigurd Ueland, all of Minneapolis, Minn., for respondent.

SANBORN and NORDBYE, District Judges.

The facts, as we find them from the admissions of the parties and the evidence, are as follows:

Mrs. Clark at all the times here material was a resident of Minneapolis, Minn., and the wife of D. D. Clark. On August 24, 1931, Mrs. Clark received a summons to report as a juror on September 1, 1931, at the Federal Building at Minneapolis, Minn. The jurors who were summoned to report on that day were all called in connection with the trial of the case of United States v. Foshay et al. At the time Mrs. Clark received her summons, she desired to be excused from service during the week of September 1st. She did not then know for what case she was called. Shortly thereafter, she telephoned her sister, Mrs. Brown, at the Federal Building in St. Paul, and made inquiry as to how she (Mrs. Clark) could be excused or her term of service as a juror postponed. Mrs. Brown called upon Miss Mullane, the chief deputy clerk of this court at St. Paul, and then called Mrs. Clark advising her that if she wished to be excused, she must see the judge when she reported on

---

[1] Jury trial with no opinion by court.

September 1st. Her sister further informed her that the trial for which she was summoned was the Foshay trial, and that she would probably not be accepted, since she had been employed by the Foshay Company, which was one of the companies with which the defendants had been connected.

Mrs. Clark, on the morning of September 1, 1931, called at the office of her husband and a Mr. Wille, with whom Mr. Clark was associated, and then, in company with Mr. Clark, reported at the courtroom in the Federal Building in Minneapolis where the case was to be tried. The other members of the panel were assembled in that room. Judge Molyneaux presided and examined the jurors as to their qualifications as jurors. Mrs. Clark, while the jury was being drawn and before she was called for examination, made the statement to several other women on the panel that she wished to serve on the jury, that she had a special reason for wanting to be on the jury, and that she was afraid that her former employment by the Foshay Company would disqualify her. That she had worked for the Foshay Company as a stenographer or typist for about two weeks in the summer of 1929, but she did not know or come in contact with any of the defendants personally.

Her husband, for a number of years prior to September 1, 1925, was president and in charge of the Citizens' State Bank of St. Paul. Prior to Mrs. Clark's marriage to him in 1922, she had also worked in the bank as a clerk and stenographer and had had the title of assistant cashier. One of the defendants had been a depositor and borrower of the bank while Mrs. Clark was working there, and he was well acquainted with Mr. Clark. Mr. Clark also knew Foshay and had done business with him and with his company.

Mrs. Clark was called to the jury box, sworn to make true answers touching her qualifications to serve as a juror, and questioned by Judge Molyneaux. The portion of her examination which is here material is as follows:

"Q. What is your husband's business? A. In the real estate business.

"Q. In what way is he in the real estate business, is he with some firm, or is he by himself? A. He is by himself.

"Q. Does he deal in city property? A. Yes, sir.

"Q. Is he selling property on commission, —making a commission? A. Yes, sir. * * *

"Q. How long has he been in the real estate business? A. For about five years.

"Q. Was he in some business before that? A. Well, we were out of the city for two years, when he was not doing anything. Before that, he was in the real estate and insurance business.

"Q. Have you yourself ever been in any business of any kind? A. I have been a stenographer before my marriage, yes.

"Q. In what kind of business did you work? A. Well, I did some banking, and some real estate and insurance, and I was with an automobile concern, with a Nash agency. * * *

"Q. Do you know any of the lawyers in this case? A. No, I do not.

"Q. Or any of the defendants? A. No, I do not. * * *

"Q. Well, do you feel that you are now,— that your mind is now open and free, and that you are not biased either one way or the other? A. Yes, I do feel that way. * * *

"Q. And you think, in the trial of this lawsuit, you could follow the evidence, or would try to follow the evidence, and base your judgment on that and the law as given to you by the Court? A. Yes, I do."

Mrs. Clark was the only woman upon the jury and the twelfth juror to be accepted. The jury was then sworn and placed in the custody of the United States marshal, and throughout the trial, which lasted approximately eight weeks, was in the charge of two officers, one a man and the other a woman. During the first week of the trial, Mrs. Clark made the remark to several of the jurors, on one occasion, that she regarded Mr. Foshay as a victim of circumstances; that he had gone to New York in the fall of 1929 to borrow $18,000,000, but that, because of the stock market crash, had come back without a dollar. When asked by one of the jurors where she had procured that information, which concededly was not based upon any evidence in the case, she said that it was from a newspaper which she had read before the trial and had forgotten about. At a later period, she expressed to other jurors dissatisfaction with the government because of the way the soldiers were treated after the war. During the deliberations of the jury, after the case was finally submitted, she announced that, since Mr. Horowitz had been unable to convince her of the guilt of the defendants, the other jurors could hardly expect to do so. She virtually closed her ears to the argu-

ments of other jurors, and made a statement with respect to the government witness Cobel, the effect of which was to charge him with having given perjured testimony in a case in the South in an attempt to convict an innocent man. This statement was obviously based upon information given to her after the trial commenced by her husband, who was permitted to visit her about once a week during the trial and converse with her supposedly in the hearing of the woman bailiff. This information conveyed by him to his wife he had received from a Miss Todd, who was connected with the firm of Wille & Clark, and who had expressed her opinion about Cobel to Mr. Clark upon seeing Cobel's picture in the newspaper during the so-called Foshay trial. Miss Todd had recognized him from this picture as being the accountant who had testified in a fraud case in Kansas City in which she at one time had been interested. Mrs. Clark, during the deliberations of the jury, expressed a wish that she might consult with her husband and secure his advice. She also made statements to the effect that she could not vote to send seven men to the penitentiary. The jury were out for approximately one week, and stood eleven for conviction, and one (Mrs. Clark) for acquittal.

How Mrs. Clark voted in the Foshay Case is, of course, of no consequence so far as we are concerned in this proceeding.

We are limited by the information filed by the government to the question whether Mrs. Clark was guilty of contempt of court because of the answers which she gave to the questions touching her qualifications to serve as a juror. If her answers were so false or deceptive as to obstruct the court in the performance of its duty, that was contempt, whether it amounted to perjury as defined by the statute, or not.

Perjury may be punished as contempt when it obstructs the court. Ex parte Hudgings, 249 U. S. 378, 39 S. Ct. 337, 63 L. Ed. 656, 11 A. L. R. 333. There the court said (page 383 of 249 U. S., 39 S. Ct. 337, 339): "An obstruction to the performance of judicial duty resulting from an act done in the presence of the court is, then, the characteristic upon which the power to punish for contempt must rest. This being true, it follows that the presence of that element must clearly be shown in every case where the power to punish for contempt is exerted—a principle which, applied to the subject in hand, exacts that in order to punish perjury in the presence of the court as a contempt there

must be added to the essential elements of perjury under the general law the further element of obstruction to the court in the performance of its duty." From this statement, it would appear that untrue answers to questions asked on the voir dire might be of such a character as to obstruct justice and constitute a contempt of court, although the person giving the answers might not be guilty of perjury in the strictest sense. We think that the essential question is whether the conduct of Mrs. Clark, as charged in the information, constituted an obstruction to the court in the performance of its duty.

We may not base a finding of contempt upon any acts of Mrs. Clark after she was accepted as a juror, since the information contains no such charges. For such bearing as such acts may have upon the question of the state of mind of Mrs. Clark at the time she was examined, they may be considered.

Mrs. Clark is presumed to be innocent of the charges made against her, and she may only be found guilty if the evidence establishes her guilt of the specific charges, or some of them, beyond a reasonable doubt. Some of the evidence is purely circumstantial, and therefore, in order to justify a finding of guilt on such evidence, the facts and circumstances proven must be not only consistent with such a conclusion, but inconsistent with any reasonable theory of innocence.

In a jury trial, if justice is to be even approximated, the jurors must be absolutely impartial and fair-minded and be governed by the evidence which is given by the witnesses sworn and examined before them, and by the law as stated by the court. The purpose of the examination to ascertain the qualifications of each juror is to enable the court and the interested parties to ascertain whether a cause for challenge exists and whether it is advisable to exercise the right of challenging a juror peremptorily. The reason that the law gives to each party peremptory challenges is to enable both sides in the trial of a lawsuit to secure a jury which all may feel is reasonably free from any bias, prejudice, interest, or embarrassing connections with any persons who are or who might be interested in the outcome of the controversy.

However, it must be kept in mind that all sorts of people are summoned as jurors and required to serve, whether they wish it or not. Some of them have never been in a courtroom before. Many have only the

vaguest notions as to what their duties are. What seems plain and simple to us seems strange and complex to them. If we establish rules of conduct for jurors which many might innocently disobey and thereby subject themselves to the possibility of being charged with contempt and fined or imprisoned, we will make jury service a very hazardous and undesirable thing. There can be no presumption that a woman knows her husband's business acquaintances or has anything more than a general knowledge of the nature of his business or business connections. Many women frequently have a great deal of misinformation about their husband's business activities, and it would, ordinarily, be unreasonable to find a woman guilty of contempt because she failed to accurately state the facts with reference to the business of her husband, either past, present, or future. Furthermore, many people in the excitement of being examined for service as jurors, forget many things which, under other circumstances, they would remember.

■■ Nevertheless, it may fairly be said to be the rule that a juror owes the duty to the court and to those who are interested in the case about to be tried, to answer fully and fairly all questions asked upon the examination to determine his qualifications, to the end that challenges may be intelligently exercised and unsuitable persons excused; and that it is a contempt to willfully conceal any fact which is material and which the juror knows or believes to be material, and which he has in mind at the time of the examination, provided the questions asked fairly call for the disclosure of that fact.

In the case of Pearcy v. Michigan Mutual Life Insurance Co., 111 Ind. 59, 12 N. E. 98, 99, 60 Am. Rep. 673, the court said on this subject: "It is the duty of a juror to make full and truthful answers to such questions as are asked him, neither falsely stating any fact, nor concealing any material matter, since full knowledge of all material and relevant matters is essential to the fair and just exercise of the right to challenge either peremptorily or for cause. A juror who falsely misrepresents his interest or situation or conceals a material fact relevant to the controversy, is guilty of misconduct, and such misconduct is prejudicial to the party, for it impairs his right to challenge. In this instance the appellant had a right to a full and truthful answer from Bowman [juryman] and it was his duty to make that answer without evasion, equivocation, or concealment." And further said: "The author-

ities support our conclusion; that if the general question fairly arouses the juror's attention, and directs it to the information desired, it is enough, without specific questions covering minute phases of the subject."

■■ A juror should, of course, whether specifically questioned or not, disclose any material information which might bear upon his qualifications; but it would not do to find a juror guilty of contempt for failing so to do, where no question was asked which would fairly call the matter to the juror's mind. A juror cannot be expected to pass upon the question of what is or what is not deemed material by the court or the litigants on the question of proper qualifications.

There has been an intimation in the press that Mrs. Clark's name was placed on the jury list in an irregular manner, and that considerable mystery surrounds the circumstances of her being on the jury panel. We deem it our duty to state that we are satisfied that she was placed on the jury list in the same manner as the other jurors, and that there is not the slightest foundation to the rumor that her name was surreptitiously placed on the list, or that any ulterior purpose prompted anyone to include her name as a juror.

The evidence would not justify finding that Mrs. Clark knew any of the defendants. Her employment with the Foshay Company continued for about two weeks. She was employed, however, with a number of typists in a large room doing copy work and did not come in personal contact with any of the defendants in this case.

We cannot say that the evidence conclusively shows that Mrs. Clark willfully concealed the fact that her husband was associated with Mr. Wille, as claimed by the government, since we think there is a reasonable doubt as to whether she knew that fact. The association was a recent one, and Mr. Clark and Mr. Wille each had his own business aside from that of the firm. Furthermore, the question as to whether Mr. Clark was by himself or with a firm was of doubtful materiality.

We cannot say that when Mrs. Clark failed to disclose her husband's former connection with the Citizens' State Bank of St. Paul, the evidence conclusively shows that she knew that that was material, that she had it in mind at the time she was examined, or that she willfully concealed it from the court. It is probable that she may have done that, but that probability is based upon inferences

which leave behind them a reasonable doubt, to the benefit of which she is entitled.

The evidence does conclusively establish that Mrs. Clark, at the time of her examination, did have in mind that she had worked for the Foshay Company in the summer of the year 1929. She had been informed by her sister that that fact would probably disqualify her as a juror in that case. Her discussion with other prospective jurors clearly indicates that she herself was apprehensive that such employment would prevent her from being accepted as a juror. We are convinced that she deliberately and intentionally concealed her association with the Foshay Company when she was examined by the court. It is true that the question asked her as to her employment did not specifically call for that information, but her deceiving answers to the court's question disarmed the court. She purposely implied in her answers to the court's questions that her employment as a stenographer was limited to the period prior to her marriage. It is significant that she mentioned her employment with the Nash agency, which employment was after her marriage and continued for a period of but a few days, but purposely withheld from the court her employment after her marriage with the Foshay Company. It is our opinion that the court's question to Mrs. Clark at the time she was examined as a prospective juror fairly required her to disclose her employment with the Foshay Company, and she was given a full opportunity to do so. Her failure to make the disclosure and her cunningly framed answers constituted an intentional concealment of a material matter.

It may be that willful evasion and part answers would not constitute perjury in a strict sense as defined in the statute. However, it is our opinion that it is not necessary to find Mrs. Clark guilty of "perjury" as defined in the statute in order to determine that she is guilty of contempt of court. It is true that the information filed by the government refers to her evasion and concealment as perjury. However, the information specifically informed Mrs. Clark that she was guilty of contempt on account of her failure to disclose the fact of her employment with the Foshay Company, and that such conduct on her part constituted an obstruction of the court in the administration of justice; consequently, it is our opinion that her conduct as disclosed by the evidence in this regard amounts to contempt, and that the information as drawn sufficiently complies with the law and advises her as to the charges made with reasonable certainty.

The determination of the falsity of Mrs. Clark's answers to the question of the court regarding her freedom from bias and her intention to follow the evidence and base her verdict solely on the testimony and the law is connected with some difficulty. It is impossible, of course, to ascertain with mathematical certainty the state of her mind when she was examined as a juror. Proof of subsequent conduct is not conclusive and may not be a safe basis standing alone upon which to predicate a finding as to a past mental state. However, it is our opinion that Mrs. Clark purposely withheld information from the court so as to be accepted as a juror. Her remarks to her fellow prospective jurors as to her desire to be accepted on the panel, and that she had a special purpose in mind, may without any other circumstances be quite consistent with an honest rather than a wicked intent. Her studied attempt, however, to get on the jury, her evasive and incomplete answers, coupled with her conduct after she was accepted, convince us that her mind was prejudiced by some person, or for some reason, before she took her oath as a juror. In light of all the circumstances as developed by the evidence, it is inconceivable that a woman with an honest intention at the outset would endeavor to influence her fellow jurors during the first week of their service with a statement regarding Mr. Foshay being a victim of circumstances. There was an utter absence of any testimony that would prompt such a statement, and while it may be a fact that she was improperly influenced after the trial commenced, she herself contends that no one communicated any information to her regarding the facts, or that any outsider endeavored to influence her after she was accepted as a juror. If her story is true regarding the absence of any outside influence, there can be no serious question but that her mind was not free and open when she was accepted as a juror, and her answers to the court in regard thereto were false and untrue. Such false answers obstructed the court in the performance of its duty and constituted contempt.

We do not believe that public policy requires that proceedings in the jury room be kept secret under the circumstances of this case. Courts are not required to permit any veil of secrecy to prevent them from exposing and punishing the wrongdoing of any juror who deliberately interferes with the

proper administration of justice. The rule which prevents the impeachment of a verdict by a juror stands upon an entirely different basis than a proceeding such as this. In McDonald and United States Fidelity & Guaranty Co. v. Pless, 238 U. S. 264, on page 269, 35 S. Ct. 783, 785, 59 L. Ed. 1300, the court said, with reference to the rule that verdicts may not be impeached by jurors: "The suggestion that, if this be the true rule, then jurors could not be witnesses in criminal cases, or in contempt proceedings brought to punish the wrongdoers, is without foundation. For the principle is limited to those instances in which a private party seeks to use a juror as a witness to impeach the verdict."

Our conclusion, therefore, is that Mrs. Clark is guilty of contempt of court to the extent herein stated. While her conduct was reprehensible, we must recognize the fact that it has in a large measure carried with it its own punishment. Mrs. Clark has brought upon herself the contempt of the community in which she lives—not because she voted for the acquittal of the defendants—but because her vote was not believed to represent her honest convictions based on the evidence and the law. We realize that the past disappointments and misfortunes of her husband in business may have created in her mind some antagonism towards organized society. Her willingness to talk to strangers of her desire to serve as a juror, which negatives to some extent the realization on her part of the seriousness of what she was doing, coupled with her unyielding attitude in the jury room, indicates to our minds the probable domination of a will stronger than her own. To these matters we have given consideration. In fairness, however, to the defendants in the Foshay Case, and their counsel, it should be stated that there is not one scintilla of evidence that would justify a conclusion that any of them had attempted to improperly influence Mrs. Clark.

So far as Mrs. Clark is personally concerned, she has already paid a considerable penalty for what she has done; but in this as in most cases of contempt, this court must not only determine what penalty should be imposed as a punishment to the individual, but also what penalty must necessarily be imposed in order to maintain the dignity of this court and its reputation as an institution. We appreciate full well that there are some close questions of law involved in this case, and it will be understood that Mrs. Clark will be given a stay of execution for forty-

two days, and be at large on her own recognizance so that she may perfect an appeal from the judgment about to be imposed, if she be so advised, and that no supersedeas will be required if she does appeal.

It is the judgment and sentence of this court that Genevieve A. Clark, as punishment for the contempt of this court of which she has been found guilty, be confined in the county jail of Ramsey county, Minn., for a period of six months, and that she pay a fine of $1,000; that execution of this sentence be stayed for forty-two days; and that she be released upon her own recognizance.