CITY OF INDEPENDENCE, Respondent,

v.

Gerald D. PETERSON, Appellant.

No. KCD 28662.

Missouri Court of Appeals,
Kansas City District.

April 4, 1977.

Motion for Rehearing and/or Transfer
Denied May 2, 1977.

Application to Transfer Denied
June 14, 1977.

Michael E. Reardon, Kansas City, for appellant; Duncan & Russell, Kansas City, of counsel.

James S. Cottingham, City Counselor, Charles E. Sandage, Asst. City Counselor, Independence, for respondent.

Before SWOFFORD, P. J., PRITCHARD, C. J., and DIXON, J.

PRITCHARD, Chief Judge.

Appellant had been convicted upon three counts in the Municipal Court of the City of Independence, Missouri, for violation of traffic ordinances in failing to stop for three red traffic signal lights, and was there fined a total of $350.00 for the three offenses. On appeal to the circuit court, he was again convicted in a trial to the court of the three charges and was sentenced to 30 days confinement in jail on each offense, to run consecutively.

Appellant's first point is that the informations failed to set forth the material elements of the offenses as described in the city ordinances. Specifically, he contends that the informations failed to allege that the traffic lights were "official traffic devices placed under the provisions of this chapter." [Chap. 18, Art. 4, § 18.064, City of Independence, Missouri Code of Ordinances.] In Point II, it is argued that the City did not prove that the traffic signals were "official" or that they were "placed under the provisions of this chapter." These related points will be considered together.

The information of Uniform Traffic Ticket, No. 174727, charged appellant of the violation, "Failed to stop for the Red Signal Light at Winner and Sterling"; No. 174728, Failed to stop for a Red Signal Light at 15th Street and Sterling"; and No. 174731, "Failed to stop for a Flashing Red Light at Ash and 24 Highway." § 18.064 provides: "*Obedience to Traffic-Control Devices.* Drivers of all vehicles except authorized emergency vehicles on official emergency trips are required to observe the instructions of all official traffic devices placed under the provisions of this chapter. Such devices shall include * * * all mechanical traffic signals, * * *. Such devices shall be held to have the same authority as the personal direction of a police officer." Each of the informations here allege the violations of "Art. No. 4 Sec. No. 18 Para 064."

Analogously, there are many civil cases, involving questions of negligence in the disobedience of traffic control devices, which hold that there is a rebuttable presumption that they were erected legally by the appropriate governing authority. See the extensive annotation, 3 A.L.R.3rd, 180, 287, § 11, where, on the effect in civil cases of violation of a claimed unauthorized stop sign, it is said that the weight of authority is that "the party relying upon such disregard need

not prove that the signaling device was authorized and maintained by virtue of, and in accordance with, statutory or administrative authority, and unless the other party proves a lack of such authority, there is a presumption of due authorization upon which the party asserting a disregard of the signal may rely." See also the earlier annotation, 164 A.L.R. 8, 212, et seq., and the there cited case of *Hartley v. McKee*, 86 S.W.2d 359, 365[12] (Mo.App.1935), where it was contended that an instruction to the jury was in error because there was no evidence that stop signs were duly erected by proper authority. The court said, "We think there is no merit in this contention for the reason that there was no issue or dispute as to the existence of stop signs at the boulevard in question." The same issue was in *Sponsler v. Schroeder*, 72 S.W.2d 150, 152 (Mo.App.1934), and the court said, "We think, under the circumstances here, the court should presume that the erection of the stop sign at the intersection in question was duly authorized. This is so especially in view of the fact that defendant permitted the proofs made by plaintiff as to the presence of the stop sign at the intersection, and the failure of defendant to stop his car in compliance therewith, to go in without any objection or suggestion that there was no showing that the erection of the stop sign had been authorized." [The same is true here. Appellant made no objection to the evidence of the presence of the traffic control devices, that appellant went through the red lights, nor was there any suggestion at that time that they were not lawfully erected.]

■■■ Prosecutions for violation of a city ordinance are in this state regarded as a civil action with quasi-criminal aspects. *Kansas City v. Howe*, 416 S.W.2d 683 (Mo. App.1967); *Kansas City v. Martin*, 369 S.W.2d 602 (Mo.App.1963). These holdings not only make the above civil cases applicable with reference to the existence of a rebuttable presumption of lawful placing of traffic devices, but make relevant criminal cases from other jurisdictions which have applied the presumption. In *State v. Cooper*, 129 N.J.Super. 229, 322 A.2d 836 (1974) [cert. denied, 66 N.J. 329, 331 A.2d 28 (1974)], the defendant was convicted for failing to stop for a red traffic signal light, under a statute almost identical with § 18.-064, supra. On appeal, he contended that the state failed to prove that the traffic signal was placed in accordance with law. In rejecting the contention the court noted its determination that there existed a presumption as to the official nature and proper placement of traffic control devices in civil cases, and said, "Once the state has proved, however, that a traffic control device does exist in a specific location, it is to be presumed official and properly placed there. The burden of going forward and adducing evidence to rebut the presumption then falls upon defendant." A like issue was in *State v. Klapes*, 2 Conn.Cir. 23, 193 A.2d 901 (Conn.App.1963). The court noted various state statutes which gave authority to towns or cities to erect stop signs within certain specifications [§ 304.120 2. RSMo (Amended by Laws, 1975, p. ——, H.B. No.83, § 1), gives municipalities authority to make additional (to speed) rules of the road or traffic regulations to meet their needs, and to require vehicles to stop before crossing designated streets and boulevards] and said, "The common-law presumption is that public officers in the discharge of their duties have observed all proper formalities, unless the contrary is proved; and this presumption serves the purpose of evidence in making out a prima facie case. * * * In the present instance, it may be presumed as a matter of law that the traffic authority of Hartford acted in accordance with the law. * * * Facts that from ordinary observation appear ostensibly true may be considered true unless shown otherwise."

Some cases seemingly hold to the contrary of the *Cooper* and *Klapes* cases, supra, but they may be distinguished. In *State v. Berberian*, 90 R.I. 274, 157 A.2d 816 (1960), apparently all the statutes and regulations with respect to locating safety zones were before the court, and regulation 12(a) required that such location be approved by

the Bureau of Police and Fire, which fact the record did not show, and thus defendant's conviction of driving over a safety zone was reversed. In *State v. Callaghan*, 46 N.J.Super 289, 134 A.2d 609 (1957), not only were the statutes prescribing size and height above the ground for signs on one-way streets before the court, but the evidence showed that the size and height above the ground were not in accordance with the statute, hence no presumption of lawful erection of the sign could be indulged. In *People v. Gay*, 5 Misc.2d 648, 164 N.Y.S.2d 526 (1957), the Vehicle and Traffic Law and Rules of the State Traffic Commission required that a stop sign be located at or near the intersection. The evidence showed that the stop sign, which defendant was charged with violating, was at that time located 175 feet north of the intersection, and had been moved after the alleged offense to a point 90 feet north of the intersection. Thus, there was evidence to show the stop sign had not been lawfully placed, and there was no basis to apply a presumption on that issue. Again, in *State v. Adams*, 273 Minn. 228, 140 N.W.2d 847 (1966), the evidence showed that the left turn regulatory sign which defendant was charged with violating was not erected in accordance with the Manual on Uniform Traffic Control Devices, for size, shape and location, which Manual was also before the court, and again no presumption could be applied that the sign was lawfully placed.

■ The common law presumption of proper performance of duties by public officials has been applied in this state. *Johnson v. Haynes*, 504 S.W.2d 308, 310 (Mo. App.1973); *Martin v. Kansas City*, 224 S.W. 141, 142[3] (Mo.App.1920); *Scales v. Butler*, 323 S.W.2d 25, 29 (Mo.App.1959). It follows, then, there being no evidence to the contrary, the traffic control devices in this case were lawfully erected, and as demonstrated, there was no additional burden of proof upon the city to show that they were lawfully erected. Because it was unnecessary for the city to assume that burden, it was further unnecessary for it to plead the lawful erection of the signals in the uniform traffic tickets. Points I and II are overruled.

■ By this last point appellant contends that there was a fatal variance between the charge of failing to stop "for a flashing red light at Ash and 24 Highway" and the proof which failed to show that it was a *flashing* device. The point is without merit because the evidence was that the light at that location was red and that appellant did fail to stop at the intersection, which is the requirement of obedience to the mechanical traffic signals under § 18.064, supra.

The judgment is affirmed.

All concur.