**In re Linda L. MOSSIE.**

No. 84–W–73–5.

United States District Court, W.D. Missouri, W.D.

June 15, 1984.

Lynda Sybrant, Asst. U.S. Atty., Kansas City, Mo., for petitioner.

Phillip Cardarella, William H. Ergovich, Kansas City, Mo., for respondent.

## CITATION OF CONTEMPT

SCOTT O. WRIGHT, District Judge.

This case is before the Court on motion by the United States Attorney pursuant to Fed.R.Crim.Proc. 42(b) requesting the Court to enter an order directing Linda L. Mossie (Respondent) to show cause why she should not be held in criminal contempt of Court. The motion arose on account of the alleged misconduct of the Respondent as a jury panel member in intentionally failing to answer questions during this Court's voir dire examination prior to a criminal trial. For the following reasons,

this Court finds the Respondent guilty of the contempt as charged.

In summary, the government alleges that the Respondent was a juror in the criminal case of *United States v. Ozzie K. Cheek and Belle Underhill, a/k/a Belle U. Greathouse*, No. 84–00025–CR–W–5, which ended in mistrial due to a hung jury on April 13, 1984. Prior to jury selection, the entire jury panel was placed under oath and each panel member was asked certain questions by this Court concerning his or her background. After informing the jury panel that the criminal case involved allegations of cocaine distribution and conspiracy, the Court asked whether any member of the jury panel had ever been accused of a crime or a criminal offense. The government claims that the Respondent previously was charged with numerous offenses, including several traffic violations, possession of marijuana, resisting arrest, and disturbing the peace. The government contends that the Respondent purposefully failed to state this information in response to the Court's question and that the administration of justice was thereby obstructed. The Respondent's primary defense is that she did not respond to the Court's questions because she was convicted only of municipal ordinance violations and she believed that such offenses were not crimes as defined by state law. Respondent also contends that she is the victim of selective prosecution on the part of the government because she was believed to be the sole juror who voted for acquittal of defendants Cheek and Underhill.

The Court initially determined that the penalty, if any, would not exceed six months' imprisonment. Therefore, the Respondent was not entitled to a jury trial. Trial to the Court was held on May 17, 1984. The Court has reviewed the evidence presented at trial and makes the following findings of fact.

## I. *Findings of Fact*

1. On April 9, 1984, voir dire examination of the jury panel in the criminal case of *United States v. Ozzie K. Cheek and Belle Underhill Greathouse* was conducted by this Court.

2. The Respondent was summoned and appeared as a prospective juror in that criminal case.

3. The Deputy Clerk of the Court administered the oath to the jury panel. (Voir Dire Transcript at 2)

4. The Court advised the jury panel that the parties to the criminal case were entitled to a completely fair and unbiased jury, and instructed the panel that their responses to the Court's questions were important. The Court instructed the panel that a panel member should alert the Court by raising his hand in order to answer a previous question of the Court. (Voir Dire Transcript at 7)

5. The Court read the criminal indictment to the jury panel, thereby advising the panel members that the defendants were each charged with six counts of distributing cocaine and one count each of conspiring to distribute cocaine. (Voir Dire Transcript at 9–11)

6. The Court again advised the panel members of the importance of truthfully answering the voir dire questions by stating the following:

"THE COURT: All right. All right, now, ladies and gentlemen of the jury, I realize that some of these questions are sort of personal. But as I indicated, the parties and attorneys are entitled to know about some of these things and I hope you will excuse us for the personal nature of some of these questions but they are entitled to know about these things, as I indicated so that they can be of aid in selecting the jury that they feel like is completely unbiased, fair and unprejudiced in trying this case." (Voir Dire Transcript at 21–22).

7. The Court asked whether anyone on the jury panel could not give a fair trial to an individual charged with the distribution of drugs. No panel member responded to this question. (Voir Dire Transcript at 40)

8. The Court asked whether any member of the jury panel had any legal education. (Voir Dire Transcript at 40) In re-

sponse, the Respondent stated that she had recently taken some administration of justice courses at a local university. (Voir Dire Transcript at 44)

9. Immediately after the Respondent's answer, another panel member volunteered that her son had been indicted for the sale of narcotics, and that the indictment was dismissed prior to trial. (Voir Dire Transcript at 44)

10. The Court then asked the panel members the following question: "THE COURT: ... Is there anyone on this jury panel, either you or a member of your immediate family, that has ever been accused of a crime ...?" (Voir Dire Transcript at 45) The following responses were given by panel members to the above question. One panel member stated that her son-in-law was convicted of a narcotics charge and was placed on probation for five years. (Voir Dire Transcript at 45) Another panel member informed the Court she was arrested and charged with a traffic violation for careless driving but was found not guilty before a judge in municipal court. (Voir Dire Transcript at 46)

11. The Court subsequently reminded the panel of the question being discussed: "THE COURT: ... We were discussing about whether or not anyone had been accused, either you or a member of your family, had ever been accused of any criminal offense." (Voir Dire Transcript at 49) In response, a panel member stated that her father served a term of imprisonment as a result of a robbery conviction approximately forty years ago. (Voir Dire Transcript at 49) Another panel member informed the Court that her son was indicted on an unspecified charge and was released after spending two weeks in custody. (Voir Dire Transcript at 50)

12. The Respondent did not respond to the Court's question about whether any panel member had been accused of a crime or any criminal offense.

13. The Court asked the panel whether any of them had read recent newspaper articles concerning drugs or cocaine. (Voir Dire Transcript at 51) Sixteen panel members answered this question in the affirma-

tive. (Voir Dire Transcript at 51–52) The Respondent did not respond to this question.

14. The Court then asked each panel member to state his or her name, place of residence, marital status, number of children, educational background, and employment status. (Voir Dire Transcript at 53). In response, the Respondent stated that she was single, 24 years old, lived in Lee's Summit, Missouri, had two years of college education, and had worked as a clerk in a grocery store. (Voir Dire Transcript at 56)

15. On August 6, 1977, the Respondent was arrested and charged with speeding. The case was disposed of in the Lee's Summit Municipal Court with the payment of a $15 fine.

16. On December 3, 1977, the Respondent was fined $25 by the Lee's Summit Municipal Court.

17. On May 6, 1978, the Respondent was arrested and charged with speeding. The case was disposed of in the Lee's Summit Municipal Court with the payment of a $25 fine.

18. On May 18, 1978, the Respondent was arrested and charged with speeding. The case was disposed of in the Lee's Summit Municipal Court with the payment of a $100 fine.

19. On May 18, 1979, the Respondent was arrested and charged with speeding. The Respondent was fined $75 by the Lee's Summit Municipal Court.

20. On February 5, 1981, the Respondent was arrested and charged with speeding. The case was disposed of in the Lee's Summit Municipal Court with the payment of a $30 fine.

21. On February 21, 1981, the Respondent was arrested and charged with careless and imprudent driving arising out of an automobile collision. The charge was reduced to a defective equipment violation and a fine of $75 was assessed by the Lee's Summit Municipal Court.

22. On June 24, 1981, the Respondent was arrested and charged with failure to stop at a red light. A $15 fine was as-

sessed by the Lee's Summit Municipal Court.

23. At approximately 1:30 A.M. on November 11, 1982, Lee's Summit police officers responded to a call informing the police of a disturbance at a local bar involving the Respondent. While attempting to provide police officers with identification, the Respondent removed from her purse a plastic bag containing a hand-rolled cigarette which appeared to the officers to be marijuana. She then began to struggle with one of the officers. When an officer attempted to handcuff her, the Respondent reached into her purse, removed some more marijuana and pills, and attempted to shove them down the dress of a friend standing next to her. The Respondent then produced two bottles of pills and threw them across the hood of a car. During the course of the arrest, the Respondent struck one of the officers with her forearm. The Respondent was agitated, combative, and appeared to be under the influence of alcohol. Ultimately, the Respondent was handcuffed, placed in the patrol car, and driven to the police station.

At approximately 2:00 A.M., the Respondent arrived at police headquarters. While at the station, the Respondent removed from her purse two needles and syringes and attempted to place them in the waistband of her pants. The syringes were removed by a detention officer. The Respondent was then allowed to visit the restroom, where she removed pills from her pants' pocket and attempted to place them in the toilet. Three of the pills dissolved before they could be retrieved by the detention officer. Before being released from custody later that day, mug shots and fin-

gerprints of the Respondent were taken at the police station.

As a result of this incident, the Respondent was charged on November 11, 1982, with possession of marijuana. Bond in the amount of $50 was posted. Imposition of sentence was suspended for one year by the Lee's Summit Municipal Court. In addition, the Respondent was charged with resisting arrest and bond in the amount of $25 was posted. The municipal court assessed a fine of $75.

24. It was stipulated that the Respondent has, in the past, used drugs including cocaine. The Respondent had discussed her drug problems with several co-workers, and had admitted to them that she used marijuana and cocaine.[1]

25. During the course of the Cheek and Underhill trial, this Court instructed the jurors on numerous occasions that they were not to discuss the case with anybody, even among themselves, until jury deliberations commenced. During the course of deliberation, the jurors were repeatedly instructed by the Court not to discuss the case with others. Notwithstanding the Court's admonition, the Respondent discussed the trial with two co-workers while the trial was in process.

The Respondent called David Scoma on the telephone one evening while the trial was in process and told him that she was a juror in a criminal drug case. She informed Scoma that she believed that defendant Cheek was innocent and that Cheek was framed or entrapped.[2]

The Respondent also called Mike Pfaff, another co-worker, while the jury deliberation in the criminal case was in progress. She informed Pfaff that only one of the

---

**1.** At the hearing, the government elicited testimony from Phillip Dillon, a church pastor and manager at the grocery store where Respondent previously worked. Over Respondent's objection that the information was privileged by reason that Dillon was a minister, Dillon testified that the Respondent had informed him that she used drugs. Although this Court does not consider such information privileged, the Court does not give any weight to Dillon's testimony, which is obviously cumulative in light of the

stipulation and the other testimony presented at the hearing.

**2.** The court notes that Cheek's theory of defense in the underlying criminal case was a general denial of the allegations. Defendant Cheek submitted no evidence that he was entrapped nor did he request a jury instruction on entrapment. In light of these circumstances, the Respondent's claim that her vote for acquittal was based on her good faith belief that the defendants were not guilty is necessarily suspect.

twelve jurors was holding out for acquittal, and that the other jurors were applying pressure on the hold-out juror. The Respondent did not tell Pfaff who the lone juror was.

These communications were made by the Respondent with the knowledge that they were in direct violation of this Court's repeated instruction to refrain from such discussions.

26. A Federal Bureau of Investigation Special Agent conducted the investigation of the Respondent which resulted in the government's prosecution of this contempt proceeding. The decision to investigate the Respondent was based on four factors. First, a number of the other jurors informed the government that the Respondent was the sole juror voting for the acquittal of the defendants. Second, the government was informed that the Respondent was seen shaking hands with defendant Cheek immediately after the conclusion of the trial. Third, the government was informed that the Respondent was seen embracing one of the defendants in a hallway outside the courtroom following the trial. Fourth, the government was informed that the Respondent was seen talking with the defendants in the courthouse lobby after trial.

The government's investigation was not based on the Respondent's vote for acquittal, rather, it was based on factors which gave the government reason to believe that the Respondent had some type of relationship with the defendants. Although it is probable the investigation would not have been initiated had the defendants been convicted, the ultimate decision of the government to prosecute this action was based not on the Respondent's vote for acquittal, rather, this action was brought because there was substantial evidence that the Respondent failed to respond truthfully to the Court's voir dire questions.

27. In connection with the charges brought on November 11, 1982, for possession of marijuana, the Respondent was represented by Attorney Larry Love. Love arranged a plea bargain with the prosecutor by which the prosecutor would recommend a suspended imposition of sentence if the Respondent would plead guilty to the charge. This arrangement was accepted, and the imposition of Respondent's sentence was suspended. Love advised the Respondent that under Missouri law the suspension of an imposition of sentence allows the person charged to deny that she had ever been convicted of a crime. Love did not, however, advise the Respondent that she could legally deny that she had ever been accused of a criminal offense.[3]

28. The Court informed the prospective jurors at the outset of the voir dire process that the criminal case involved charges of cocaine distribution.

29. The Respondent told another member of the jury panel that she would like to be selected as a member of the jury.

30. Had the Respondent informed the parties that she had been accused and convicted of her numerous municipal offenses previously described, the prosecution would have moved that the Respondent be stricken from the jury panel for cause. Had such a request been overruled, the prosecution would have exercised one of its peremptory challenges to remove the Respondent from the jury panel.

31. The evidence established beyond a reasonable doubt that the Respondent knowingly and willfully failed to give a truthful answer in response to the Court's voir dire question asking whether any panel member had been accused of a crime or any criminal offense.

32. The evidence further established beyond a reasonable doubt that the Respondent's untruthful answer was used to gain acceptance on the jury.

33. The evidence established beyond a reasonable doubt that the Respondent's actions obstructed the administration of justice.

**3.** Counsel's advice was apparently based on Mo. Rev.Stat. §§ 610.106, 610.110, and 610.120. Although the accuracy of counsel's advice is questionable, the relevance of his advice lies with its effect on the Respondent's state of mind and not its legal merit.

34. The Respondent did not choose to respond to the Court's question because she believed that municipal ordinance violations were not crimes, and her allegations to the contrary were not credible.

### Motions to Dismiss

The Respondent has filed three separate motions to dismiss this contempt proceeding, and evidence relevant to the motions was presented in conjunction with the trial. Respondent contends that this action should be dismissed because: (1) she is the victim of selective prosecution in that she would not have been subjected to a contempt action but for the fact that she voted for the acquittal of the defendants in the Cheek and Underhill case; (2) the Court's question on voir dire was ambiguous and not sufficiently clear about what answer was required; and (3) the Respondent has never been accused of a crime because she has been accused only of municipal violations which under Missouri law are considered to be merely civil infractions and not criminal violations.

### A. Selective Prosecution

In order to establish the essential elements of a *prima facie* case of selective prosecution, the Eighth Circuit has stated that

A defendant must first demonstrate that he has been singled out for prosecution while others similarly situated have not been prosecuted for conduct similar to that for which he was prosecuted. Second, the defendant must demonstrate that the government's discriminatory selection of him for prosecution was based upon an impermissible ground, such as race, religion or his exercise of his first amendment right to free speech.

*United States v. Catlett*, 584 F.2d 864, 866 (8th Cir.1978).

■ The Respondent contends that she was selected for prosecution because of the position she took as a juror during the jury deliberations in the underlying case. Assuming the truth of Respondent's allegation, there is no question that prosecution based on a juror's vote for acquittal would be patently impermissible. The protection of a juror's subjective freedom of expression in deliberation must be guaranteed, and any practice permitted by a court allowing the government to prosecute jurors based on their deliberation would destroy the foundation of the jury system. "It is axiomatic that fundamental to the administration of justice is a fair and impartial jury. (cites omitted) The introduction of outside influences into the deliberative process of the jury is inimical to our system of justice." *United States v. Bagnariol*, 665 F.2d 877, 884 (9th Cir.1982).

■ The evidence submitted at trial, however, does not support Respondent's theory that she was singled out for prosecution on account of her conduct in the jury room. Rather, the government's institution of the contempt proceeding was based on at least four factors. First, government authorities were informed that at the conclusion of the criminal trial the Respondent was seen shaking hands with defendant Cheek in the courtroom. Second, the government was informed that the Respondent was seen embracing one of the defendants outside the courtroom immediately after the trial. Third, the government was advised that the Respondent was seen on the first floor of the courthouse after the trial talking with both defendants. This information was unsolicited and was supplied by three different individuals. Fourth, several of the other jurors had informed the government that the vote during jury deliberations was eleven to one, with the Respondent being the lone juror voting in favor of acquittal.

■ It is apparent, in light of the above factors, that the Respondent was not subjected to investigation and prosecution simply because she voted for acquittal. The evidence established beyond a reasonable doubt that the government's initiation of the initial investigation was based on information indicating that the Respondent may have had some type of relationship with the defendants or at least possessed some significant prejudices in favor of the defendants. Furthermore, although the Respon-

dent's jury deliberation may have been one factor in the decision of the government to investigate, the application for contempt brought by the government is based on information strongly suggesting that the Respondent purposefully failed to answer questions on voir dire examination. Such conduct has long been considered to constitute a valid basis for a criminal contempt action. *See, e.g., United States v. Clark,* 289 U.S. 1, 53 S.Ct. 465, 77 L.Ed. 993 (1933). Accordingly, Respondent's motion to dismiss on the basis of selective prosecution will be denied.

### B. *Lack of Clarity in Voir Dire Question*

The Respondent contends that she cannot be held in contempt because the question asked by the Court on voir dire examination was not clear and because it was ambiguous and speculative to a layman.

The question posed by the Court to the jury panel members was: "Is there anyone on this jury panel, either you or a member of your immediate family, that has ever been accused of a crime....?" (Voir Dire Transcript at 45).[4] In response to this question, one panel member stated that her son-in-law had been convicted of a narcotics charge and was placed on probation for a period of five years. Another panel member responded by stating that she was faced with charges for careless driving as a result of a traffic accident but was found not guilty in municipal traffic court by a judge. A third panel member stated that her father had been indicted and had been incarcerated for robbery approximately forty years ago. A fourth panel member indicated that her son was indicted eight years ago on an unspecified charge but was released after spending two weeks in custody. A fifth panel member stated that his brother-in-law was convicted and sentenced in federal court to serve five years imprisonment for a tax violation.

The Court finds that the extremely broad range of answers to the Court's questions

given by five different panel members is fairly conclusive evidence against the Respondent's argument that the questions were not clear. The responses given described charges including robbery, narcotics violations, a traffic offense and a tax charge. Those individuals described as having been charged included one panel member and relatives of panel members including a father, a son, a father-in-law and a brother-in-law. The disposition of the offenses described included a verdict of not guilty, probation, and incarceration. The judicial systems described ranged from traffic court to federal court. The diversity of these responses plainly establishes the clarity of the Court's questions.

■ Moreover, an examination of the questions themselves reveals simple straight-forward inquiries that should elicit a response from a panel member charged with any type of offense. Jurors are required to "honestly and conscientiously answer the real implications of the questions asked, no more and no less. And, while the sweep of questions may be general and broad, the affirmative duty of the prospective juror is to answer as fully and completely as possible under the circumstances." *Bal Theatre Corp. v. Paramount Film Distributing Corp.,* 206 F.Supp. 708, 721 (N.D.Cal.1962). Voir dire examination "always must be interpreted in the light of realities of the setting in which it occurs." *Id.* In light of these standards, it is apparent that the questions asked by the Court were sufficiently clear to put the Respondent on notice that she was under an affirmative duty to inform the Court and the parties of the numerous charges, involving traffic violations, marijuana possession, and disturbing the peace, which had previously been brought against her. Accordingly, Respondent's motion to dismiss on the ground that the Court's question was not clear is denied.

4. The Court subsequently posed the same question again in a slightly different form, telling the panel members: "We were discussing about whether or not you or a member of your family, had ever been accused of any criminal offense." (Voir Dire Transcript at 49)

C. *Duty of Respondent to Disclose Municipal Violations on Voir Dire Examination*

The Respondent contends that the government's contempt application should be dismissed because she has never been accused of a crime within the meaning of Missouri law and, therefore, she was under no duty to answer the Court's questions as to whether any jury panel member had been accused of a crime or any criminal offense. Respondent relies on *City of Ferguson v. Nelson*, 438 S.W.2d 249 (Mo.1969), in which the Missouri Supreme Court stated that "an action for the violation of a city or town ordinance is to be regarded as a civil action for the recovery of a penalty, and that it is not a prosecution for crime." *Id.* at 255. The Respondent also points out that according to the Missouri Supreme Court municipal court proceedings "are not prosecutions for crime in a constitutional sense." *Kansas City v. Stricklin*, 428 S.W.2d 721, 724 (Mo.1968).

Initially, the Court notes that this theory of defense is of questionable viability in the instant case because the Court has previously found that the Respondent's failure to answer questions on voir dire was motivated not by her alleged reliance on the legal distinction between municipal ordinance violations and technical crimes, but instead the Respondent's silence was the result of her deliberate concealment of facts in order to avoid exclusion from the jury. Nonetheless, the Court rejects this defense as a matter of law and concludes that the Respondent was under an affirmative duty to disclose the nature of her previous municipal ordinance violations.

■ First, the line of Missouri cases relied on by the Respondent do not involve the issue of whether a jury panel member has a responsibility to reveal past municipal ordinance prosecutions when asked on voir dire whether a panel member has been accused of a criminal offense. Rather, these cases draw a distinction between municipal ordinance infractions and state law violations for purposes of determining whether the more formal rules of state criminal procedure apply. *See, e.g., Kan-sas City v. Stricklin, supra*, 428 S.W.2d at 725–26 (because proceeding for violation of city ordinance is in the nature of a civil action, the same strictness in stating an offense is not required as in a criminal prosecution); *City of Cameron v. Stinson*, 633 S.W.2d 437, 439 (Mo.App.W.D.1982) (prosecutions for municipal ordinance violations have certain quasi-criminal aspects and rules of criminal procedure are applicable thereto).

Second, Missouri case law makes it clear that municipal ordinance violations, although technically civil actions, also involve criminal characteristics. "Prosecutions for violation of a city ordinance are in this state regarded as a civil action with quasi-criminal aspects." *City of Independence of Peterson*, 550 S.W.2d 860, 862 (Mo.App. K.C.1977). Although a prosecution for the violation of a city ordinance is civil in form, it resembles "a criminal action in its effects and consequences." *City of Clayton v. Nemours*, 237 Mo.App. 167, 164 S.W.2d 935, 937 (St.L.1942). A municipal ordinance violation proceeding is "closely related to a criminal case," and the consequences of a conviction are "nearly identical with those of a conviction of a crime...." *Id.* 164 S.W.2d at 938. Most relevant to the instant case is the fact that although civil in form, in the sense "that its primary object is to punish, a prosecution for the violation of a city ordinance is undoubtedly criminal in its purpose ..." *Id.*

The inclusion of municipal violations within the meaning of the term "criminal offense" is both logical and consistent with Missouri law defining the nature of a municipal offense. A municipal ordinance proceeding may be civil in form " 'but, if it was solely civil, no fine or imprisonment could be inflicted.' " *City of St. Louis v. Young*, 235 Mo. 44, 138 S.W. 5, 8 (1911), quoting *Stevens v. Kansas City*, 146 Mo. 460, 48 S.W. 658, 659 (Mo.1898). "The criminal character of such cases lies then in the fact that their object is to punish, and that the proceeding involves the arrest and physical restraint of the person charged." *City of St. Louis, supra*, 138 S.W. at 8. An arrest of an individual on a municipal

ordinance charge "is an incident to the criminal phase of the case, so that when he is in custody in such a proceeding, he is in custody on a criminal charge." *Id.*

Respondent in the instant case was charged with no less than eight traffic violations over the course of just four years. Each was disposed of by the payment of fine. Respondent also was arrested and charged with possession of marijuana and resisting arrest in circumstances that can best be described as violent, outrageous and unforgettable. As a result of the marijuana charge, imposition of Respondent's sentence was suspended for one year. The resisting arrest charge subsequently was reduced to a charge of disturbing the peace and a fine was imposed. There can be no question that, in light of these circumstances involving the Respondent's multiple charges, arrest, and punishment for a variety of offenses, the Respondent had been accused of a "crime" or "criminal offense" as the terms were used by the Court on voir dire examination.

■ The distinction between municipal ordinance and state law violations aside, it is clear that the Respondent was under a duty to disclose her previous offenses. The constitutional standard of fairness requires that a criminal defendant have a panel of impartial and indifferent jurors. *Murphy v. Florida,* 421 U.S. 794, 95 S.Ct. 2031, 2036, 44 L.Ed.2d 589 (1975). Similarly, while a criminal defendant is entitled to a fair trial, "the government is also entitled to a fair trial, and there can be no fair trial without an impartial jury." *Clark v. United States,* 61 F.2d 695, 709 (8th Cir.1932), *aff'd, Clark v. United States, supra,* 289 U.S. 1, 53 S.Ct. 465, 77 L.Ed. 993. Jurors should be excused for cause if their experience is such as to indicate the probability of partiality. *United States v. Caldwell,* 543 F.2d 1333, 1345 n. 47 (D.C.Cir.1976).

The function of voir dire examination is to "implement the constitutional guarantee of an impartial jury, a fundamental right of our system of criminal justice. To this end, every juror has the duty to answer questions affecting his qualifications honestly." *United States v. Moss,* 591 F.2d 428, 438

(8th Cir.1979). The scope of voir dire examination and the responsibility of jury panel members has been defined as follows:

> The answers to questions put by the Court necessarily form the basis for a Court's excusing a juror on its own motion or challenges for cause by the parties and the exercise of peremptory challenges by each side. Necessarily, it is expected and required that jurors in their answers shall be completely truthful and that they shall disclose, upon a general question, any matters which might tend to disqualify them from sitting on the case for any reason. It therefore becomes imperative that the answers be truthful and complete. False or misleading answers may result in the seating of a juror who might have been discharged by the Court, challenged for cause by counsel or stricken through the exercise of peremptory challenge. The seating of such a juror could and probably would result in a miscarriage of justice and therefore courts and attorneys, who are officials of the court, are ever mindful of the importance of jurors' answers to questions regarding their qualifications.

*United States v. Freedland,* 111 F.Supp. 852, 853 (D.N.D.1953).

■ Although the scope of voir dire questions may be general and broad, the affirmative obligation of the prospective juror is to answer as completely as possible under the circumstances. *Bal Theatre Corp. v. Paramount Film Distributing Corp., supra,* 206 F.Supp. at 721. Voir dire examination "must be interpreted in light of the reality of the setting in which it occurs." *Id.* In this case, the Respondent had been advised by the Court that the defendants in the underlying case were charged with cocaine distribution. Although the Respondent's background included drug involvement, numerous fines for traffic offenses, an arrest on charges of possession of marijuana and resisting arrest, and convictions for possession of marijuana and disturbing the peace, the Respondent purposefully decided not to respond to the Court's question as to whether

**1408**

she had ever been accused of a criminal offense. The situation clearly required the Respondent to answer. Her contention that she subjectively chose not to respond because she believed she had never been accused of a crime is not only incredible, but even if true it would not obviate her legal duty to fully and completely answer the Court's question. "Voir dire examination is not a game in which the questioner is engaged in a battle of wits with the prospective jurors. It is a time-honored process by which courts determine the qualifications of jurors to fairly and impartially try the issues to be presented to them. It treats with a frame of mind and, therefore, cannot be circumscribed by any technical conception." *Id.* Therefore, the Court concludes that the Respondent was under a duty to reveal her numerous municipal offenses in response to the Court's voir dire questions. Accordingly, the Respondent's motion to dismiss will be denied.

## II. *Conclusions of Law*

The alleged contemnor in a contempt proceeding is presumed innocent, and the government has the continuing burden of proving her guilt beyond a reasonable doubt. *In Re Van Meter,* 413 F.2d 536, 538 (8th Cir.1968); *Yates v. United States,* 316 F.2d 718, 715 (10th Cir.1963). A jury trial is not required for criminal contempt actions if the penalty actually imposed does not exceed six months imprisonment. *Taylor v. Hayes,* 418 U.S. 488, 94 S.Ct. 2697, 2701, 41 L.Ed.2d 897 (1974). Because this Court previously stated that a sentence in excess of six months would not be imposed in this case, this action was properly tried without a jury. *See United States v. Martinez,* 686 F.2d 334, 340 (5th Cir.1982).

Criminal contempt proceedings may be presented by notice, and there is no requirement that a grand jury indictment be returned to initiate a contempt proceeding. *United States v. Nunn,* 622 F.2d 802, 804 (5th Cir.1980). According to Fed.R. Crim.Proc. 42(b), such notice shall state the time and place of the hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal offense and de-

scribing it as such. The notice required by this Rule is judged with less strictness than is a formal indictment or information, and there are no formal imperatives so long as the notice satisfies due process requirements by informing the respondent of the nature of the contempt charged. *United States v. Martinez, supra,* 686 F.2d at 345.

The Court concludes that the Respondent was sufficiently notified of the criminal contempt proceeding. By order dated April 17, 1984, the Respondent was notified that the government had filed an application requesting that the Court issue an order directing the Respondent to show cause why she should not be held in criminal contempt for failure to truthfully answer voir dire questions prior to the Cheek and Underhill trial. The Respondent was specifically advised that the government had alleged that she failed to respond to the court's question as to whether any member of the jury panel had been accused of a crime, and that there was reason to believe that the Respondent had been accused and convicted of offenses including possession of marijuana, resisting arrest, and numerous traffic violations. In addition, the Respondent was advised by the Court order that she had the right to be assisted by counsel in the preparation and presentation of her defense. After Respondent's motion for continuance was granted, trial was set and held on May 17, 1984. Accordingly, the Court finds that the notice to the Respondent of the contempt proceeding was sufficient pursuant to Rule 42(b).

### *Elements of the Offense*

"Concealment or misstatement by a juror upon a voir dire examination is punishable as a contempt if its tendency and design are to obstruct the processes of justice." *Clark v. United States, supra,* 53 S.Ct. at 467. There are three essential elements in a criminal contempt proceeding against a juror for failure to respond truthfully to voir dire questions. *Bays v. Petan Co. of Nevada, Inc.,* 94 F.R.D. 587, 590 (D.Nevada 1982). First, that the Respon-

dent knowingly and willfully gave an untruthful answer in response to a voir dire question. *Bays, supra,* 94 F.R.D. at 590. Willfulness in the context of a contempt proceeding "means a deliberate or intended violation, as distinguished from an accidental, inadvertent, or negligent violation of an order." *Falstaff Brewing Corp. v. Miller Brewing Co.,* 702 F.2d 770, 782 (9th Cir. 1983). Willfulness in a contempt proceeding may be inferred from the admitted evidence and consists of a volitional act done by one who knows or should reasonably be aware that her conduct is wrongful. *United States v. Baker,* 641 F.2d 1311, 1317 (9th Cir.1981). Second, that the untruthful answer was used by the Respondent to gain acceptance on the jury. *Bays, supra,* 94 F.R.D. at 590. Third, that the Respondent's actions obstructed the administration of justice. *Id.*

Initially, the Court notes that the Respondent's contention that her failure to answer was due to her belief that municipal violations do not constitute accusations of criminal activity is not credible. First, there is no legitimate foundation for her belief. Her previous attorney, who represented the Respondent in connection with only one of her ten municipal charges, stated that he informed the Respondent that the effect of a suspended imposition of sentence would allow the Respondent to deny that she had ever been convicted of a crime. Only one of the Respondent's offenses, however, involved a suspended imposition of sentence. Thus, even if such advice were accurate, it would not create a plausible excuse for failure to disclose the remaining offenses.

In addition, there was no credible evidence on the record supporting the Respondent's contention that she had good reason to believe that municipal ordinance convictions were not criminal offenses. Her prior attorney's advice focused on the proposition that the Respondent could deny that

she was ever convicted of a drug-related offense, and not on the premise that a municipal court violation is not technically a crime under Missouri law. Moreover, the Court's question on voir dire was whether any panel member had been *accused* of a criminal offense, and the Respondent's attorney specifically admitted that he never told her that she could deny she had ever been accused of a crime under Missouri law.

Similarly, the Court rejects the Respondent's contention that she acquired her alleged knowledge about the nature of municipal violations through her undergraduate administration of justice classes. It is unlikely at best that such a remote and misleading proposition of law would be included in a broad undergraduate curriculum. Nonetheless, it is the conclusion of the Court that even if such information was within the knowledge of the Respondent, such knowledge was not the motivation behind her failure to respond to voir dire · examination. Rather, the following facts conclusively demonstrate that the motive behind her silence was to become a member of the jury.

■ The Respondent's admitted involvement with drugs, particularly cocaine, as well as her repeated brushes with the law, provided the Respondent with a substantial motive to seek membership on a jury panel which she knew would be determining the guilt or innocence of two individuals charged with cocaine distribution. The Respondent's hidden motives were subsequently exercised when her votes for acquittal prevented the conviction of the defendants.[5] Moreover, it was the Respondent's expressed desire to become a member of the jury. Aware of the fact that the disclosure of her municipal convictions was certain to affect the chances she would be chosen for jury service, the Respondent opted to remain silent when other panel

---

**5.** The Court notes that where a prima facie showing is made of fraudulent concealment or false swearing to gain acceptance as a juror, such as in the instant case, the traditional juror's evidentiary privilege is inapplicable and evidence as to the juror's deliberation and ballots

may be admitted. *Clark v. United States, supra,* 53 S.Ct. at 469. Similarly, Federal Rule of Evidence 606(b) does not apply to proceedings where the inquiry is whether the individual shall be held in criminal contempt. *Bays v. Petan Co., supra,* 94 F.R.D. at 591.

members were revealing violations ranging from traffic offenses to drug-related convictions.

It is inconceivable that the Respondent could in good faith believe that she had never been accused of a criminal offense. Apart from eight separate arrests and fines due to traffic violations, the Respondent was arrested, fingerprinted and photographed at a police station as a result of a violent encounter with police officers. This incident resulted in charges against the Respondent for possession of marijuana and resisting arrest. In order to be released from custody, the Respondent was required to post bond. It is, therefore, difficult to imagine more significant indications of criminal accusation.

■ Finally, the Court cannot ignore the fact that the Respondent admitted violating, on two separate occasions, this Court's instruction not to discuss the criminal case while the trial was pending. Although this Court's finding of contempt cannot be based on this conduct, such acts are relevant to her state of mind during the voir dire process. *See United States v. Baker, supra,* 641 F.2d at 1317 (intent in contempt proceeding may be inferred from the circumstances); *United States v. Clark,* 1 F.Supp. 747, 750 (D.Minn.1931), *aff'd* 61 F.2d 695 (8th Cir.1932), *aff'd,* 289 U.S. 1, 53 S.Ct. 465, 77 L.Ed. 993 (1933) (subsequent acts of alleged contemnor relevant to state of mind at time of alleged contempt). Thus, the tendency of the Respondent to violate subsequent Court orders challenges Respondent's assertion that she believed she responded truthfully on voir dire examination.

■ For these reasons, the Court concludes that the Respondent intentionally failed to respond to the Court's voir dire questions so that she could gain acceptance on the jury. Similarly, there is no question that the Respondent's actions obstructed the administration of justice. It should be

emphasized that the obstruction exists not because the defendants were acquitted. Rather, the obstruction of justice resulted from the fact that the government was denied the opportunity to challenge the Respondent for cause, and was thereby denied its right to trial by an impartial jury. Accordingly, the Respondent is found to be in contempt of Court.

### III. *Punishment*

■ According to Fed.R.Crim.Proc. 42(b), upon "a verdict or finding of guilt [of contempt] the court shall enter an order fixing the punishment." Neither the federal statutes nor the Federal Rules of Criminal Procedure set a maximum sentence for this type of criminal contempt. *United States v. Patrick,* 542 F.2d 381, 392 (7th Cir.1976). In the absence of such a limitation, the severity of the sentence to be imposed is within the sound discretion of the trial court. *Id.* "Great reliance is placed on the district court's discretion." *Id.*

■ The Court has reviewed the seriousness of the Respondent's transgressions as well as the deterrent effect of appropriate punishment and concludes that the profound magnitude of the Respondent's conduct requires this Court to impose the maximum sentence that may be imposed without trial by jury. Accordingly, it will be ordered that the Respondent serve a term of imprisonment of six months. Execution of sentence shall be suspended, however, and the Respondent will be required to complete a period of two years of probation under the supervision of the United States Probation Office.[6] A special condition of Respondent's probation will require Respondent to complete satisfactorily 500 hours of community service as supervised and approved by the Probation Office. In addition, the Respondent will be required to participate in a drug and alcohol abuse

---

6. As previously noted, a jury trial is not required in criminal contempt actions if the penalty actually imposed does not exceed six months' imprisonment. *Taylor v. Hayes, supra,* 94 S.Ct. 2701. The penalty for contempt may, without the necessity of a jury trial, include a period of probation for up to five years, and if the terms of probation are violated, imprisonment for up to six months may be imposed. *Frank v. United States,* 395 U.S. 147, 89 S.Ct. 1503, 1506–07, 23 L.Ed.2d 162 (1969).

program administered by the Probation Office.

In conclusion, the Court believes that the following observations are necessary to put this case in proper perspective. It is crucial that members of the public recognize the affirmative duty of jury panel members to give complete and truthful answers to questions by the Court on voir dire examination. The foundation of our legal structure is the jury system, and, in order for the system to provide a fair and impartial jury as guaranteed by the Constitution, the members of a jury panel must provide the Court and the parties with pertinent and accurate information. Failure on the part of courts to guard this principle scrupulously would result in the demise of our system of justice. The authority of the courts to invoke their contempt powers against those who deliberately conceal information on voir dire has long been recognized by the Supreme Court. *See United States v. Clark*, 289 U.S. 1, 53 S.Ct. 465, 77 L.Ed. 993 (1933).

It must also be noted that it "is unthinkable that a court would punish a juror because of a vote for acquittal of a defendant, and it is clear that such was not the case here." *Clark v. United States, supra*, 61 F.2d at 709. The Respondent is not being punished due to her vote for acquittal, rather, the Respondent is subject to this Court's contempt power because she intentionally failed to respond to this Court's examination and thereby obstructed the administration of justice. Voir dire interrogation is not a game in which the Court is engaged in a "battle of wits" with the prospective jurors, rather, it is a "time-honored process by which courts determine the qualifications of jurors" to fairly and impartially try the case before them. *Bal Theatre Corp., supra*, 206 F.Supp. at 721. Accordingly, it is hereby

ORDERED that the Respondent is adjudged guilty of criminal contempt of Court. It is further

ORDERED that the Respondent serve a term of incarceration of six months. Execution of sentence is suspended on the condition that the Respondent successfully complete a two-year period of probation. A special condition of this probation, in addition to those conditions imposed by the United States Probation Office, is that the Respondent satisfactorily complete 500 hours of community service as supervised by the Probation Office. In addition, the Respondent will be required to participate in a drug and alcohol abuse program administered by the Probation Office.