In re: **Linda L. MOSSIE, Appellant.**

No. 84–2170.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 13, 1985.

Decided July 26, 1985.

Rehearing and Rehearing En Banc Denied Oct. 24, 1985.

Philip F. Cardarella, Kansas City, Mo., for appellant.

Lynda Sybrant, Asst. U.S. Atty., Kansas City, Mo., for appellee.

Before LAY, Chief Judge, and HEANEY and FAGG, Circuit Judges.

HEÁNEY, Circuit Judge.

Linda L. Mossie appeals from a citation for contempt stemming from her responses to the district court's voir dire questions when she served as a juror in a federal criminal trial, 589 F.Supp. 1397. For reversal, she argues that, on voir dire, she was not obliged to disclose certain municipal ordinance violations, that the district court's voir dire questions were not clear and certain, and that she was selectively prosecuted. We reverse.

Mossie served on a jury in a trial of two defendants on cocaine charges. In screening the venire panel on voir dire, the court made a series of statements regarding the venirepersons' qualifications as jurors; if the statements did not describe the prospective jurors, the court directed them to make that clear, and a colloquy would follow. At issue in this case is the court's statement:

> I am assuming that none of you have a charge pending or been [sic] convicted of any crime in any State or Federal Court of record punishable by imprisonment for more than one year.

Subsequently, the court asked the venire panel, "Is there anyone on this jury panel, either you or a member of your immediate family that has ever been accused of a crime * * *?" Mossie remained silent, and although other members of the venire panel responded by mentioning offenses by other family members, only one of the venire panel disclosed an ordinance violation. In that incident, the venireperson had been charged with careless driving and found not guilty in traffic court before a municipal judge.

Mossie was selected to serve on the jury, and the case ended in a mistrial. After the result of the case was announced, several jurors approached an FBI agent in the courtroom and reported that Mossie had been the lone holdout in an eleven-to-one decision. Moreover, witnesses reported that Mossie had been seen embracing and shaking hands with the defendants after the trial.

Acting on this information, the FBI agent investigated Mossie's background and learned that she had had eight traffic offenses in the previous several years and that, two years before, she had pled guilty to charges of marijuana possession and disturbing the peace in Lee's Summit, Missouri. Based on this information, the United States sought a contempt citation against Mossie. After a contempt hearing, the district court cited Mossie for contempt and sentenced her to six months in prison, with sentence suspended on the condition of her successful completion of a two-year probation period.

The voir dire process must be exercised fully and fairly to apprise the parties and the court of the qualifications of jurors to serve on a given case. Its function "is to implement the constitutional guarantee of an impartial jury, a fundamental right of our system of justice. To this end, every juror has the duty to answer questions affecting his qualifications honestly." *United States v. Moss*, 591 F.2d 428, 438 (8th Cir.1979). Yet honest answers hinge on fair interpretations of the voir dire questions, and when lay people and lawyers use legal language together, the resulting ambiguity can create great interpretive problems.

The First Circuit has held that "jurors, ignorant of voir dire procedure, are to be held to the question asked, and not to some other question that should have been asked." *United States v. Rhodes*, 556 F.2d 599, 601 (1st Cir.1977). Under the circumstances, we see no alternative but to read the voir dire question literally and to construe its terms strictly. Although we recognize the burden this places on the courts and on parties in formulating voir dire questions, any other result shifts the burden of precision and legal interpretation away from the court and onto lay jurors, who might then be held accountable for their misunderstandings. This result would be neither just nor prudent.

In the case at bar, the venire panel was asked whether they had been "accused of a crime" or whether they had "a charge

pending or been convicted of a crime * * * punishable by imprisonment for more than one year." Although Mossie had been accused of marijuana possession and disturbing the peace, which might be "crimes" in some jurisdictions or under some statutes, she was formally charged with these offenses under municipal ordinances and pled guilty to them as municipal ordinance violations.

We review the district court's findings of fact under the clearly erroneous standard set forth in Fed.R.Civ.P. 52(a). *See United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). We recognize that, as the Supreme Court has recently declared,

> the court of appeals may not reverse [the district court] even though convinced that it had been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's link between them cannot be clearly erroneous.

*Anderson v. Bessemer City*, — U.S. —, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985) (citations omitted).

Reviewing the evidence under this standard, we find that the district court clearly erred.

The Missouri Supreme Court has recognized that violations of municipal ordinances are not to be regarded as "crimes" in the fullest sense, with all of the attendant legal disabilities of a criminal conviction. In *City of Ferguson v. Nelson*, 438 S.W.2d 249, 255 (Mo.1969), the Missouri court noted that "[a]n action for the violation of a city or town ordinance is to be regarded as a civil action for the recovery of a penalty and that it is not a prosecution for a crime." *Accord Kansas City v. Stricklin*, 428 S.W.2d 721, 724 (Mo.1968) (en banc). ("Proceedings in municipal courts against persons for violations of city ordinances are civil actions to recover debt due the city or to impose a penalty for infractions of such ordinances, and are not prosecutions for crime in a constitutional sense.")

The reasonableness of Mossie's conduct is bolstered by her reliance on the advice of the counsel who represented her on her guilty plea to the ordinance violations. Based on his reading of Missouri statutes, he testified at the contempt hearing that he told her that because her sentence was suspended, "she could always deny that she had ever been convicted of a drug-related offense." He also noted that he told her that under that statute, "a person could not be charged with perjury or anything if they did not admit that they'd ever been charged with an offense." *See* Mo.Ann.Stat. §§ 610.105 ("If * * * imposition of sentence is suspended in the court in which the action is prosecuted, official records pertaining to the case shall thereafter be closed") and 610.110 ("No person as to whom such records have become closed records shall thereafter, for any provision of law, be held to be guilty of perjury or otherwise of giving a false statement by reason of his failure to recite or acknowledge such arrest or trial in response to any inquiry made of him for any purpose.") (Vernon 1984). When Mossie's attorney was asked the hypothetical question whether a person charged with a municipal ordinance violation had been accused of a crime, he responded that he would advise his clients that "they were not accused of a crime since I do not consider a municipal court violation to be a crime."

Based on our review of the record, we believe that Mossie's answers to the district court's questions were literally true and demonstrate that the contempt finding was clearly erroneous. The district court asked three questions on voir dire: had any of the jurors been "convicted of any crime," had they been "accused of a crime," or were they the subject of "a charge pending?" On the first of these questions, we note that Missouri law seals the criminal records of some offenders (including Mossie) and relieves them of the duty to disclose the fact of their conviction. Therefore, because Mossie received a suspended sentence, she need not have disclosed her conviction.

Resolution of the second question requires careful parsing of the record. Although Mossie's counsel agreed with the district court that he had not used the phrase *"accused* of a crime" in advising Mossie, he testified that he had advised her she would not perjure herself if she did not disclose that she had been *"charged* with an offense."[1] We believe it is clear error to erect a fine distinction between these two words, particularly where the district court was responsible for framing clear questions and where Mossie was relying on advice of counsel. Our conclusion on this point is also supported by the fact that Mo.Ann.Stat. § 610.110 protects from disclosure the defendant's "arrest or trial" on the previous offense, which a reasonable person might well interpret as including accusation of a crime.[2] The third question, that of a pending charge, was not at issue in this appeal.

Without interpreting this statute beyond Mossie's reliance, and without deciding for this case more than the Missouri courts decided in the two cases we cite above, we hold that the district court clearly erred in its contempt finding. Although the better practice would have been for Mossie to resolve her doubts in favor of disclosure, we cannot say that, in light of the voir dire question, the relevant Missouri case law, and the advice of her attorney, she should have been held in contempt.

Because we decide the case on this issue, we need not reach the other issues Mossie raises. Accordingly, the judgment of the district court is reversed.

FAGG, Circuit Judge, dissenting.

This court today reverses the conviction of Linda A. Mossie, who, for the express purpose of gaining acceptance to the jury and obstructing the administration of justice, knowingly and willfully failed to respond honestly to the district court's *voir dire* question. In so doing, this court, although acknowledging the controlling standard of review, misapplies this standard and rejects the detailed and fully supported factual determinations of the district court. Just as significantly, in ruling as it does this court again diminishes a fundamental principle of our system of adversary justice, *i.e.,* the requirement of truthful, forthright, and honest testimony, *see, e.g., Whiteside v. Scurr,* 744 F.2d 1323 (8th Cir.), *rehearing denied,* 750 F.2d 713, 717–19 (8th Cir.1984) (Fagg, dissenting), *cert. granted sub nom. Nix v. Whiteside,* —— U.S. ——, 105 S.Ct. 2016, 85 L.Ed.2d 298 (1985). Because I cannot accept the immediate or long term implications of such a decision, I respectfully dissent.

The case before us was tried to the district court. Thus, the district court was solely responsible for making the subsidiary and ultimate factual determinations to which the relevant legal principles were

1. We reproduce here the relevant portion of Mossie's counsel's testimony:

    Q. Did you have occasion to discuss with her the effect of a suspended imposition of sentence with regard to Missouri law?

    A. Yes, I did.

    Q. What did you tell her?

    A. I discussed this with Miss Mossie on probably about three different occasions. When she first came into the office I told her that I thought I could probably get a suspended imposition of sentence, discussed what I understand a suspended imposition of sentence to be. Then after I talked to the prosecutor on the day of the court hearing, I called her and discussed it with her. And I discussed it with her after we had actually gone to court that evening. I told her that once a year had ran, the record would be closed and Missouri law provided that a person could not

get the information unless they were a law enforcement official or something of this nature and that there was a statute that said that a person could not be charged with perjury or anything if they did not admit that they'd ever been charged with an offense. And I told her as far as I was concerned, she could always deny that she had ever been convicted of a drug related offense.

2. Our resolution of the dispute over the district court's first two questions is also bolstered by the common-law definition of a "crime." As we have noted, the Missouri state courts have elected to distinguish crimes from ordinance violations. Contrary to the dissent's suggestion, the fact that this is the law of Missouri eliminates any need for a showing in the record of advice or reliance on this definition of "crime."

then applied. These findings must be, and have historically been, accorded a high degree of deference by this court. This high degree of deference, which is reflected in the "clearly erroneous" standard of review, *see e.g., United States v. Johnson*, 570 F.2d 836, 838 (8th Cir.1978), is well-founded since the district court, unlike this court, actually sees the witnesses and hears them testify. As a result, the district court is best qualified to weigh conflicting evidence and make all necessary credibility determinations.

Under the "clearly erroneous" standard of review, a finding of fact will only be overturned if "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer*, — U.S. —, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)); *accord United States v. Dochterman*, 630 F.2d 652, 653 (8th Cir.1980). Further, in reviewing the district court's findings

> "appellate courts must constantly have in mind that their function is not to decide factual issues *de novo.*" *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 123, 89 S.Ct. 1562, 1576, 23 L.Ed.2d 129 (1969). If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.

*Anderson*, 105 S.Ct. at 1512 (emphasis in original). Finally, when—as in this case—many of the district court's findings rest upon credibility determinations, this court must be particularly reluctant to set aside those findings. *Dochterman*, 630 F.2d at 653; *see also Anderson*, 105 S.Ct. at 1512–13.

In the present action, after hearing the evidence and after making numerous detailed and fully supported findings of sub-sidiary fact, *see In re Mossie*, 589 F.Supp. 1397, 1400–04 (W.D.Mo.1984), the district court ultimately found that Mossie knowingly and willfully failed to respond to the court's question; that Mossie did so in order to gain acceptance on the jury; and that Mossie's actions resulted in the obstruction of justice. *Id.* at 1403. Although these findings of fact are fully supported in the record and provide a solid basis for sustaining Mossie's contempt conviction, they are never specifically mentioned or discussed in this court's opinion. Instead, the court implicitly rejects these findings when, after first determining that ordinance violations are not crimes under Missouri law, it finds both that Mossie's lawyer advised her that under Missouri law she could deny ever having been accused of a crime and that Mossie in fact relied on this advice in failing to respond to the district court's question. *Ante* at 987–988.

These two findings by the court, which are in all respects *de novo* factual determinations, explicitly reject one specific finding of the district court and entirely ignore a second specific finding of that court. First, with respect to the issue of the lawyer's advice, the district court, which saw the witness and heard him testify, found that Mossie's lawyer "did not * * * advise [her] that she could legally deny that she had ever been accused of a criminal offense." 589 F.Supp. at 1403. While the court purports to apply the clearly erroneous standard to this finding, viewing the record as a whole, this finding simply cannot be considered clearly erroneous.

During trial, Mossie's lawyer was called upon to testify concerning his statements to Mossie. In the course of testifying, the lawyer gave two conflicting statements with respect to the advice that was given. The first of these statements, which occurred on direct examination, can reasonably be read to indicate that the lawyer told Mossie that she could deny ever having been accused of a crime. *See* Record at 94. The second statement, however, which was made in response to a direct

inquiry by the court, can reasonably be read to indicate that while the lawyer informed Mossie that she could deny ever having been convicted of a crime, he did not advise her that she could deny ever having been accused of a crime. *See id.* at 99.

The district court, which was in the position to weigh the evidence and determine credibility, concluded that the lawyer's latter statement more accurately reflected what actually occurred. This determination by the district court is based upon two competing and reasonably supported views of the evidence and thus is conclusively binding on this court. As the Supreme Court has recently reaffirmed, "[w]here there are two permissible views of the evidence, the fact finder's choice ˌbetween them cannot be clearly erroneous." *Anderson,* 105 S.Ct. at 1512.

With respect to the issue of reliance, the court, again after a *de novo* review of the record, assumes that Mossie actually relied on the lawyer's advice in failing to respond to the district court's question. *Ante* at 987, 988. This finding fails to consider the district court's specific determination that "[Mossie's] failure to answer * * * was motivated not by her * * * reliance on the legal distinction between municipal ordinance violations and technical crimes, but instead * * * was the result of her deliberate concealment of facts in order to avoid exclusion from the jury." 589 F.Supp. at 1406.

The court's failure to consider the district court's finding is particularly troublesome since in this case the determination of Mossie's reliance turns largely on the issue of Mossie's credibility as a witness. In such a situation, "even greater deference [must be given] to the district court's findings; for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." *Anderson,* 105 S.Ct. at 1512. Here, the court, in failing to mention the district court's finding, fails to give any deference

let alone greater deference to the credibility determination of the district court.

The court also ignores the district court's related finding that Mossie's "admitted involvement with drugs, particularly cocaine, as well as her repeated brushes with the law, provided [Mossie] with a substantial motive to seek membership on a jury panel which she knew would be determining the guilt or innocence of two individuals charged with cocaine distribution." 589 F.Supp. at 1409. This finding like all other findings made by the district court is supported by substantial evidence in the record as a whole and thus is not clearly erroneous and is binding on this court. By ignoring this and many other findings and just as seriously by ignoring or misapplying the controlling standard of review, this court has usurped the district court's role as the primary finder of fact.

The court, in a footnote, does attempt to trivialize the district court's findings by suggesting that issues such as advice and reliance are largely irrelevant. The court's position is premised on its view that Mossie's failure to respond to the court's question (whether she had been accused of a *crime* ) was literally a true response under Missouri law and thus cannot provide any basis for a finding of contempt. *Ante* at 988 n. 2. The court's position would be well taken if the evidence established that Mossie's failure to respond, regardless of advice or reliance, was inadvertent and without ulterior motive. In such a situation, contempt would not lie since no willful or purposeful attempt to obstruct justice could be established.

Here, however, the district court specifically found that Mossie's failure to respond was purposefully intended both to avoid exclusion from the jury and ultimately to obstruct the administration of justice. 589 F.Supp. at 1403. This ultimate finding, which is fully supported in the record, flows directly from the district court's subsidiary findings with respect to advice and reliance, and in my opinion transcends any protection this court's technical construction of Missouri law might otherwise pro-

vide Mossie. The court's view allows Mossie, who willfully and purposefully failed to answer the court's *voir dire* question in an eventually successful attempt to obstruct justice, to avoid being found in contempt simply because by a technical construction of state law her answer, although dishonest and evasive, cannot be said to be literally false. I cannot accept such a result.

Reviewing the record and applying the appropriate standard of review, it is clear that Mossie understood the court's questions but determined not to answer them because she knew that to do so would lead to her exclusion from the jury. It is also clear that in so doing Mossie knowingly and willfully failed to respond in order to gain acceptance on the jury and to obstruct the administration of justice by preventing the defendants' convictions.

Because I believe that the district court's opinion and its findings are supported by the record, I feel this court is obligated to affirm the district court. In failing to do so, this court allows Mossie to use and abuse to her advantage our system of justice.