IN the MATTER OF the FINDINGS OF
CONTEMPT IN STATE of Wisconsin v. Thomas
M. DEWERTH: Bruce CURRIE, Appellant,

v.

Honorable James B. SCHWALBACH, Circuit
Court Judge for Washington County,
Respondent.†

Court of Appeals

*No. 84–1811. Argued August 8, 1985.—Decided May 14,
1986.*

(Also reported in 390 N.W.2d 575.)

---

† Petition to review granted.

---

For the appellant, there were briefs and oral argument by *Robert J. Lerner* of *Perry, First, Reiher, Lerner & Quindel, S.C.* of Milwaukee.

For the respondent, there were briefs by *Bronson C. La Follette*, attorney general and *James H. McDer-*

*mott,* assistant attorney general. Oral argument by *James H. McDermott.*

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

NETTESHEIM, J. Bruce Currie appeals from an order of the trial court finding him in contempt of court and imposing a fine of $500 or, in lieu of payment, a sentence of thirty days in the county jail.[1]

Upon appeal, Currie contends that: (1) his act was not a contempt of court; (2) the trial court's findings are insufficient to support the conclusion that a contempt of court occurred; (3) the trial court improperly used the summary procedures of sec. 785.03(2), Stats.; and (4) the trial court erred in failing to accord Currie an opportunity for allocution. We reject all of Currie's arguments with the exception of the latter. We remand for purposes of an allocution proceeding wherein Currie will have an opportunity to make a statement in mitigation of his offense.

Currie was summoned as a petit juror in the case of *State of Wisconsin v. Thomas M. Dewerth.*[2] The trial court, in the course of its voir dire of the petit jurors, inquired whether any member of the panel had experienced any dealings with the Washington County District Attorney's Office. Currie responded:

---

[1] The trial court originally imposed a fine of $1000. The final order reduced the fine to $500—the maximum permitted by sec. 785.04(2), Stats.

[2] The record forwarded to us on appeal does not reveal the exact nature of the charge against Dewerth. Currie's brief states that the charge was operating while intoxicated. The respondent's brief does not dispute this.

> My brother was murdered by a drunk driver, and my family had dealings with the Washington County District Attorney's Office.

The trial court then asked Currie as to the extent of any possible prejudice. Currie responded:

> I don't like anybody in the Washington County District Attorney's Office.

In light of this response, the trial court excused Currie.[3]

As Currie stepped down from the jury box and passed near the defense table, he made a remark which was partially heard by the trial court. The remark, to the extent heard, prompted the trial court to immediately remove the jury panel from the courtroom and to conduct further proceedings concerning Currie.

At these proceedings, the trial court indicated it had heard only a portion of the comment.[4] Defense counsel then reported that Currie had said, "I hope they hang you." Counsel also reported that the remark was made with "feeling and expression." The trial court then stated that it had heard the "hang you" portion of the remark and proceeded to summarily find Currie

---

[3] The propriety of excusing Currie from the jury panel is not at issue on appeal.

[4] At this point, the court reporter also interjected that she had not heard the remark and that it was not on the record. A parenthetical entry in the official transcript, following the trial court's excusing of Currie, indicates that Currie made a statement as he passed the defense table. The entry further indicates that the remark was "unheard" by the court reporter. This indicates that the remark was in fact heard but was not decipherable by the court reporter.

in contempt of court and impose a fine of $1000.[5] The trial court also granted Dewerth's motion for a new jury panel, thus necessitating a continuance of the case.

Following the imposition of the fine, Currie attempted to speak but was halted by the trial court with the admonition that any further statements might draw a jail sentence.[6]

## THE CONTEMPT FINDING[7]

■
Currie contends that his act was not a contempt

[5] The amount of the fine was an estimate of the costs to the county for the production of the jury panel and to the Village of Germantown for the production of its police officer witnesses.

[6] Later in the proceedings, the following exchange between Currie and the trial court took place:

THE COURT: . . . Okay. How long do you need to pay that fine, Mr. Currie?
MR. CURRIE: Do I get to have a lawyer?
THE COURT: No, buster. This is summarital, [sic] summarily occurred right in the presence of the Court. I'll give you 60 days within which time to pay the fine. You fail to pay it, 45 days in the county jail.
MR. CURRIE: I got a question for you, sir. I was up here how many times in front of you, and you were aware of what our family has gone through in the past.
THE COURT: I don't have the foggiest what your family went through.
MR. CURRIE: It was in your court.
THE COURT: I don't know what your family went through, sir, and I don't care in that regard; it doesn't excuse the remark.

[7] As a threshold claim, the respondent contends that Currie has waived his right to assert his various claims because he did not challenge the trial court's order nor seek reconsideration of the findings or the sanction. While, ordinarily, we might agree that these issues are better presented first for trial court consideration, here the trial court had warned Currie that any further attempts to speak might result in a jail sentence.

of court. Section 785.01, States., defines a contempt of court, in part, as "intentional . . . misconduct in the presence of the court which interferes with a court proceeding or with the administration of justice. . . ." Section 785.01(1)(a). Currie's conduct clearly qualified as contempt on both counts for it not only interfered with the proceeding and the administration of justice, but also aborted the entire trial. A more complete and classic contempt of court can hardly be imagined.

## THE TRIAL COURT FINDINGS[8]

Currie argues that the trial court's finding that the jury panel and remaining petit jurors were "infected"

We doubt that the trial court would have adhered to this view if a later hearing had been sought by Currie. We nonetheless choose not to hold Currie to a strict application of the waiver rule given the prospects, however remote, which he faced.

[8] The present statutes do not expressly require findings relative to the contempt. The predecessor statute, sec. 757.04(1), Stats. (1977), required the judge to certify on the record the conduct constituting the contempt. 18 U.S.C. Rule 42(a), the equivalent federal statute, similarly requires a certification by the judge "that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court."

> The reason for this requirement is obvious. Because the defendant has been convicted without notice or hearing, there is no record of the conviction upon which appellate review may be based. The factual recitation in the certificate supplies this deficiency. Accordingly, "[t]his requirement is more than a formality. It is essential to disclosure of the basis of decision with sufficient particularity to permit informed appellate review."

*United States v. Marshall,* 451 F.2d 372, 374–75 (9th Cir. 1971) (citations omitted). The same holds true under our statute even though there is no express requirement of findings or certification. Meaningful review could not occur without such findings.

by the remark is unsupported by the record. Currie contends that the trial court was required to conduct voir dire of the panel and the petit jurors in order to determine whether such taint actually existed. We disagree.

The question of whether or not a defendant's act is a contempt of court is one which the trial court has far better opportunity to determine than a reviewing court. *Schroeder v. Schroeder,* 100 Wis. 2d 625, 640, 302 N.W.2d 475, 483 (1981). Although the remedy for direct contempt may be harsh, an appellate court will not reverse except in a plain instance of mistake or abuse of discretion. *In re Adam's Rib, Inc.,* 39 Wis. 2d 741, 746, 159 N.W.2d 643, 646 (1968). In a setting where the judge is prompted to act summarily to punish for contemptuous conduct, the act has occurred under the eye of the court and the contemnor is present. *Groppi v. Leslie,* 404 U.S. 496, 504 (1972). A hearing in a formal sense is not necessary because the judge has personally seen the offense and is acting on his own observations. *Id.*

*Adam's Rib* holds that the standard of review for the trial court's findings in a contempt proceeding is whether the findings are contrary to the great weight and clear preponderance of the evidence. *Adam's Rib* at 746–47, 159 N.W.2d at 646–47. Stated in current terms of standard of review, where a trial is to the court, we inquire whether the findings are clearly erroneous. *See* sec. 805.17(2), Stats. Here, we conclude they are not.

36

Although the trial court did not hear the entirety of Currie's remark, that portion which was heard ("hang you") prompted the trial court to take the immediate action of removing the jury from the courtroom and ordering Currie to remain. The trial court then informed itself as to the balance of the offending statement before summarily finding Currie in contempt. Neither Currie nor the prosecutor disputed defense counsel's recital and characterization of Currie's full statement. The trial court found that Currie made the remark while facing away from the bench. From this, it follows that the other petit jurors in the back of the courtroom or near the defense counsel table likely heard the remark and thus were "infected" thereby. This is precisely what the trial court found. The finding is not clearly erroneous.

Nor are we persuaded that the trial court was required to conduct further voir dire to specifically determine whether any of the potential jurors had actually heard the remark. As stated above, the trial court's finding that the panel was "infected" is a logical and fair inference from the physical facts. While such voir dire might strengthen the factual basis for the trial court's finding, it was not necessary to sustain it.

Currie next argues that the trial court erred by not expressly finding that Currie's act was intentional.

Contempt of court is defined as an "intentional . . . misconduct. . . . ." *See* sec. 785.01(1)(a), Stats. It is undisputed that the trial court did not make an express finding as to the intentional nature of Currie's conduct. We, however, do not find this omission as fatal to the

trial court's conclusion that a contempt of court occurred.

The trial court factually described Currie's conduct and its perceived effect upon the jury panel. The trial court then labeled the conduct a contempt of court. We hold these findings and conclusion sufficient to satisfy the statutory elements of contempt. In this regard, we also note that neither did the trial court expressly find that Currie's conduct interfered with a court proceeding or with the administration of justice. *See* sec. 785.01(1)(a), Stats. That these were the results of Currie's conduct, however, is readily apparent from the record of the proceedings and from the findings and conclusion that the trial court did make. The trial court's description of the conduct and its effect upon the proceedings, coupled with the conclusion that the conduct constituted a contempt of court, satisfies all the elements of a contempt, including intent.

Next, Currie argues that even if it was not necessary for the trial court to expressly find that his conduct was intentional, the record otherwise does not show it to be so. Specifically, Currie contends that his actions must have had the purpose to interrupt or disrupt the proceedings. Here, Currie borrows from the criminal code, sec. 939.23(3), Stats., which defines "intentionally" as requiring that the "actor either has a purpose to do the thing or cause the result specified or believes that his act, if successful, will cause that result."

However, the contempt statute, sec. 785.01(1)(a), Stats., requires only that the misconduct be intentional—not that a disruptive result be intended or even foreseen. Here there is no claim (nor any basis

for one) that Currie's utterance of the remark was not intentional.[9]

Cases from other jurisdictions, although addressed to the concept of "willfulness" as opposed to "intentional," are supportive of our holding. Willfulness in a civil contempt means a deliberate or intentional violation, as distinguished from an accidental, unintentional or negligent violation of an order. *Falstaff Brewing Corp. v. Miller Brewing Co.,* 702 F.2d 770, 782 (9th Cir. 1983); *In re Mossie,* 589 F. Supp. 1397, 1409 (W.D. Mo. 1984), *rev'd on other grounds,* 768 F.2d 985 (8th Cir. 1985). In the context of a contempt proceeding, willfulness is defined as a volitional act done by one who knows or should reasonably be aware that his conduct is wrongful. *United States v. Baker,* 641 F.2d 1311, 1317 (9th Cir. 1981). Such willfulness may be inferred from admitted evidence. *Id.*

We therefore reject Currie's claim that the record does not support the existence of the element of intent.

## SUMMARY PROCEDURE

We next examine whether the facts of this case permitted the trial court to use the summary procedures of sec. 785.03(2), States. We conclude they did.

---

[9] The dissent contends that Currie's act did not challenge the authority of the court. This seems to assume that Currie must have harbored some intent to do so. However, as we have held, it is the conduct which must be intentional, not its effect upon the proceedings—a conclusion with which the dissent otherwise does not appear to disagree.

The first sentence of sec. 785.03(2), Stats., allows a judge to impose a punitive sanction summarily when a contempt is committed in the presence of the court.

> The judge presiding in an action or proceeding may impose a punitive sanction upon a person who commits a contempt of court in the actual presence of the court.

*Id.* Undisputedly, Currie's contempt was committed in the presence of the court. However, the second sentence of the statute appears to require a further condition—the need to preserve order—before a punitive sanction can be summarily imposed.

> The judge shall impose the punitive sanction immediately after the contempt of court and only for the purpose of preserving order in the court and protecting the authority and dignity of the court.

*Id.* Read in its entirety, we are uncertain whether the statute requires an ongoing state of disorder or disruption as a condition precedent to the summary imposition of a punitive sanction, or whether a disruption which has terminated, nevertheless, still permits the summary imposition of such a sanction.

Ambiguity arises when more than one reasonable, although not necessarily correct, meaning can be attributed to a word, phrase, or statute. *State v. Nixa,* 121 Wis. 2d 160, 164, 360 N.W.2d 52, 54 (Ct. App. 1984). Here, we conclude that the statute allows for either of the above reasonable interpretations.[10] Thus, we con-

---

[10] We agree with the respondent's observations as to the "odd and somewhat internally discordant aspect" of secs. 785.01(2) and

clude the statute is ambiguous. For the reasons stated below, we conclude that a prior disruption, presently quelled, is sufficient to permit the summary imposition of a punitive sanction.

Essentially, Currie argues that because his act of contempt was so effective as to terminate the proceedings, there was no more order in the court to preserve. We disagree. Contempts which are disruptive to the point of aborting the proceedings are the ultimate challenges to the orderly administration of justice and the ultimate form of disorder. We reject an interpretation of the statute which permits summary punishment of those whose conduct fails to cause such an end but forbids it against those whose conduct achieves it.

Moreover, absurd and illogical results would follow if we were to hold that an ongoing state of disorder or disruption must exist before a trial court may summarily proceed. For example, if Currie had engaged in continuous disruptive conduct, but not of a kind resulting in a termination of the proceedings, there is no question but that he could have been dealt with summarily. Yet where, as here, a momentary act of contempt is so effective, complete and devastating as to abort the entire proceedings, Currie's interpretation would require a nonsummary procedure.[11]

---

785.03(2), Stats. The former defines a punitive sanction as one imposed to punish a past contempt of court for purposes of upholding the authority of the court. The latter, however, permits the imposition of punitive sanctions for purposes of preserving order in the court and protecting the authority and dignity of the court. This contradictory language supports our conclusion that the statute is ambiguous.

[11] The dissent stresses that Currie's contempt consisted of a single act and that Currie was otherwise respectful to the court. This approach erroneously implies that an assessment of whether

It strikes us as patently unfair and illogical that a contemnor whose conduct does not abort the proceedings receives the summary end of the contempt stick with minimal or no due process, while the contemnor whose conduct is so disruptive so as to abort the proceedings receives the benefits of the nonsummary procedure with its full panoply of constitutional rights.

Absurd and unreasonable constructions and applications of statutes are to be avoided. *See State Central Credit Union v. Bigus,* 101 Wis. 2d 237, 242, 304 N.W.2d 148, 150–51 (Ct. App. 1981). To avoid such result, we read the "preserving order" language of sec. 785.03(2), Stats., as referring to the *effect* of the contemptuous conduct upon the order of the court at the *time of the occurrence of the conduct* and not as to the *time of the finding of contempt or imposition of the sanctions.* Indeed, it is difficult to imagine a situation where a continuously disruptive contemnor would not be sufficiently under control (through the use of physical restraint or other means) to permit the trial court to conduct a punitive sanction proceeding. If Currie's argument prevailed, the summary imposition of punitive sanctions could rarely, if ever, occur—a condition urged by the dissent. However, we conclude such a pronouncement would emasculate the trial courts when dealing with disruptions which destroy order and offend the dignity of judicial proceedings.

The American Bar Association Standards for Criminal Justice appear to be in accord with our interpretation of sec. 785.03(2), Stats.:

an act is contemptuous and whether summary proceedings are appropriate rests upon its frequency rather than its substance and effect.

> Inherent power of the court. The court has the inherent power to punish any contempt in order to protect the rights of the defendant and the interests of the public by assuring that the administration of criminal justice shall not be thwarted. The trial judge has the power to cite and, if necessary, *punish summarily anyone who, in the judge's presence in open court, willfully obstructs the course of criminal proceedings.*

Standards for Criminal Justice § 6–4.1 (2d ed. 1980) (emphasis added). This standard does not require an ongoing state of disorder or disruption before a court may act summarily.

The dissent contends that our approval of summary contempt procedures under these facts is contrary to *In re B.L.P.*, 118 Wis. 2d 33, 39, 345 N.W.2d 510, 514 (Ct. App. 1984), where we noted the preferred policy of the law to choose due process over expediency. While the dissent correctly cites this principle of *B.L.P.*, it overlooks the different factual and legal setting in which it was uttered. *B.L.P.* held that "a summary procedure is only available if a contemptuous act is committed in the actual presence of the court," *id.* at 41, 345 N.W.2d at 515, a condition satisfied here. *B.L.P.* goes on to hold that "because B.L.P. *did not* commit a contemptuous act in the court's presence, summary procedure is not appropriate." *Id.* (emphasis added). Thus, *B.L.P.* supports our holding here.[12]

---

[12] Moreover, we noted in *B.L.P.* that a remedial sanction was a likely penalty to be imposed for a violation of the juvenile court's dispositional order. *B.L.P.*, 118 Wis. 2d at 42, 345 N.W.2d at 515. Here, Currie's conduct involved no disobedience of a court order. Thus, a remedial sanction against Currie was not sought.

Thus we conclude that the trial court's summary imposition of punitive sanctions, being necessary to preserve order in the court and to uphold the authority and dignity of the court, was proper.

## RIGHT OF ALLOCUTION

Currie next argues that even if the trial court properly used the summary procedure, it nevertheless was constitutionally required, under the facts of this case, to grant him a meaningful opportunity to speak in mitigation of his act. We agree.

To a large extent, both Currie and the respondent rely on the same line of cases for their contrary positions. *See Taylor v. Hayes,* 418 U.S. 488 (1974); *Groppi v. Leslie,* 404 U.S. 496 (1972); *Levine v. United States,* 362 U.S. 610 (1960); *Brown v. United States,* 359 U.S. 41 (1959), *overruled on other grounds in Harris v. United States,* 382 U.S. 162 (1965). Currie argues that these cases "stress" that an opportunity to be heard occurred in conjunction with the summary imposition of contempt sanctions. The state observes that none of the cases fixes a bright-line rule that such an opportunity is required. Both are correct.

In general, the power to punish for contempt is to be used sparingly, and it should not be used arbitrarily, capriciously, or oppressively. *Adam's Rib,* 39 Wis. 2d at 746, 159 N.W.2d at 646. The ever present danger that summary powers may be abused has brought appellate courts to view the exercise of such powers with caution and circumspection. *See United States v. Marshall,* 451 F.2d 372, 374 (9th Cir. 1971). It is essential that courts proceeding summarily must be meticu-

lously careful to observe procedural safeguards. *Widger v. United States*, 244 F.2d 103, 107 (5th Cir. 1957).

Although language such as that cited above suggests that some degree of procedural due process or procedural safeguards apply in a summary proceeding, we must, in all candor, acknowledge that other decisions suggest that no such protections apply in a summary proceeding.

> It results from what has been said that it was competent for the circuit court, immediately upon the commission, in its presence, of the contempt recited in the order of September 3, to proceed upon its own knowledge of the facts, and punish the offender, without further proof, and without issue or trial in any form. It was not bound to hear any explanation of his motives, if it was satisfied . . .—from what occurred under its own eye and within its hearing—that the ends of justice demanded immediate action, and that no explanation could mitigate his offense or disprove the fact that he had committed such contempt of its authority and dignity as deserved instant punishment.

*Ex Parte Terry*, 128 U.S. 289, 309–10 (1888).

Even as ardent an advocate of procedural due process as Justice Frankfurter has opined that "[s]ummary punishment of contempt is concededly an exception to the requirements of Due Process." *Sacher v. United States*, 343 U.S. 1, 36 (1952) (Frankfurter, J., dissenting). Such exception is premised upon the dictates of necessity. *Id.* Justice Frankfurter, in the same breath, however, concedes that "[n]ecessity must bound its limits." *Id.*

45

The respondent cites two Wisconsin cases, *Rubin v. State,* 192 Wis. 1, 211 N.W. 926 (1927), and *In re Rosenberg,* 90 Wis. 581, 63 N.W. 1065 (1895), for his contention that the *Terry* statement has received the blessing of the Wisconsin Supreme Court. Although *Rubin* cited the *Terry* language with approval, Rubin *was accorded the right of allocution* prior to the finding of contempt and imposition of sanctions. In *Rosenberg,* although the supreme court stated that it was a "proper case to be punished summarily," *id.* at 587, 63 N.W. at 1067, the contemnor was imprisoned until he complied with a discovery order of the court. Thus, *Rosenberg,* with its purge conditions, is actually a civil contempt case.[13] Therefore, neither Wisconsin case squarely meets the "right of allocution" issue presented here.

Thus, no case as yet has clearly stated whether the constitution applies in a summary contempt proceeding. This uncertainty prevails because the varied exigencies of the moment presented in contempt cases interfere with the fixing of a bright-line rule. Contempt assumes many forms and impacts on the proceedings in various ways. Some extreme contempt situations might, of necessity, require dispensing with the constitution entirely. *Harris v. United States,* 382 U.S. 162 (1965), acknowledges that in summary contempt proceedings, speedy punishment "may be necessary in order to achieve 'summary vindication of the court's dignity and authority.'" *Id.* at 164 (quoting *Cooke v. United States,* 267 U.S. 517, 534 (1925)). However, most contempt situations should allow for at least a modicum of due process or procedural safeguards. Whether

---

[13] The opinion on the motion for rehearing acknowledged as much. *See In re Rosenberg,* 90 Wis. 581, 590, 64 N.W. 299, 299 (1895).

such accommodations are required must, of necessity, be decided on a case-by-case basis.

As to the need for speedy punishment in this case, we think *Groppi v. Leslie,* 404 U.S. 496 (1972), is instructive. Although dealing with legislative contempt, the Supreme Court in *Groppi* utilized much of the case law governing judicial contempt of court as the rationale for its decision. *Groppi* recognized that a right to be heard, even briefly, might go to "matters in explanation or mitigation [which] might lessen the harshness of the legislative judgment or avoid punishment altogether." *Id.* at 503. In addressing the equivalent situation in a court of law, the Supreme Court observed:

> Where a court acts immediately to punish for contemptuous conduct committed under its eye, the contemnor is present, of course. There is then no question of identity, nor is hearing in a formal sense necessary because the judge has personally seen the offense and is acting on the basis of his own observations. *Moreover, in such a situation, the contemnor has normally been given an opportunity to speak in his own behalf in the nature of a right of allocution.*

Id. at 504 (footnote and citations omitted; emphasis added). Faced with such an explanation of the offense, the conduct might be found excusable. *Id.* at 505. If not, at least the conduct might be explained.[14]

---

[14] We acknowledge that the record reveals some remarks by Currie which might explain or mitigate his conduct. These were not offered, however, in response to any invitation to speak. Rather, the remarks are a nonresponsive statement to an inquiry by the trial court as to whether Currie needed time to pay the fine.

We also acknowledge that Currie may have nothing further to offer the trial court by way of explanation or mitigation of his

Therefore, while a trial court may be entitled to proceed summarily because of the disruptive to its order and the interference with its ability to continue the proceedings, this does not necessarily mandate the deliverance of immediate punishment without a meaningful opportunity to be heard in mitigation. Under the facts of this case, although the trial court was entitled to proceed summarily, we conclude it was not entitled to immediately punish without any allowance for minimal procedural safeguards.

The state places great emphasis on *Ex Parte Terry,* 128 U.S. 289 (1888), and its language that the trial court was not bound to hear any explanation of the contemnor's motives when the ends of justice demanded immediate action and no explanation could mitigate the offense. *Terry* is distinguished on its facts, however. Terry had engaged in a physical and violent confrontation in the courtroom which disrupted the proceedings. The disturbance continued to an area immediately outside the courtroom. Terry argued that the contempt order was void because it deprived him of an opportunity to defend. The Supreme Court rejected this argument because Terry had voluntarily absented himself from the courtroom by carrying his contempt beyond its bounds.

Such is not the case here because Currie remained in the presence of the trial court in obedience to its order. Moreover, Currie attempted to speak but was halted by the trial court. Thus, the *Terry* facts are inapposite. Here, the trial court, unfortunately faced with an aborted proceeding, could have accorded Currie a

conduct. From the limited remarks Currie was permitted to interject, we simply don't know.

momentary right of allocution without unduly interfering with whatever other business the trial court may have been required to perform.

We stress that the right of allocution is limited to those situations where the speedy imposition of punishment is not immediately necessary to achieve some vindication of the court's authority or to restore order. This holding does not contemplate a prolonged or involved hearing. It mandates only a limited, but meaningful, opportunity for a convicted contemnor to offer an explanation or justification in mitigation of the offense. It remains within the discretion of the trial court as to the duration and the extent of the hearing. This will vary from case to case depending upon the circumstances then prevailing.

We also stress that this procedure, which admittedly delays, temporarily, the imposition of punitive sanctions in a summary proceeding, does not serve to deprive the trial court of its authority to proceed summarily. Summary procedure does not refer to the timing of the action with reference to the offense but refers to a procedure which dispenses with the formal requirements of due process. *See, e.g., Sacher v. United States,* 343 U.S. 1, 9 (1952). If we were to hold that summary punishment can be imposed only instantly upon the event, it would be an incentive to the trial courts to pronounce, while smarting under the irritation of the contemptuous act, what should be a well-considered judgment. *Id.* at 11. As did the United States Supreme Court in *Sacher,* we reject such a requirement.

The complaint might be made that this holding splits hairs too finely by permitting the use of summary procedure while forbidding the immediate impo-

sition of punitive sanctions without a right of allocution. This concern is answered, however, by recalling the historical justification for the use of summary contempt procedures. This procedure, with its absence of procedural and due process safeguards, is met with legal and constitutional approval largely because the contempt is committed under the eye and ear of the court. Faith in the ability of the judge to objectively recall the incident serves as the underpinning for this extreme departure from standard fact-finding procedure.

The same rationale does not hold true for the imposition of a penalty. Faith in the ability of the judge to accurately "recreate" the event without formal hearing and fact-finding does not serve to give the judge a "crystal ball" as to reasons that might exist by way of explanation in mitigation of the act of contempt. Thus, absent compelling circumstances demonstrating the need to punish immediately, fundamental fairness requires a right of allocution.

Trials and judicial proceedings are matters of intense emotions and high feelings for litigants, witnesses, lawyers, jurors and judges alike. When the fervor of the moment appears to inspire an intemperate remark resulting in a disruption of the proceedings, the trial court must have the tool of summary procedure available in order to effectively deal with the situation. By the same token, because this tool is vast in its power and minimal in its protections, appellate courts are required to view the exercise of such powers with caution and circumspection. *See Marshall,* 451 F.2d at 374. In our judgment, fundamental fairness requires a minimal opportunity to speak in mitigation of a contempt offense unless compelling circumstances

demand otherwise. We see no such compelling circumstances under the facts of this case.

Here again we note that the ABA Standards for Criminal Justice are in accord:

> Notice of charges and opportunity to be heard. Before imposing any punishment for criminal contempt, the judge should give the offender notice of the charges and at least a summary opportunity to adduce evidence or argument relevant to guilt or punishment.

Standards for Criminal Justice § 6–4.4 (2d ed. 1980). The commentary to this standard states:

> Although there is authority that in-court contempts can be punished without notice of charges or an opportunity to be heard, such a procedure has little to commend it, is inconsistent with the basic notions of fairness, and is likely to bring disrespect on the court. Accordingly, notice and at least a brief opportunity to be heard should be afforded as a matter of course. Nothing in this standard, however, implies that a plenary trial of contempt charges is required.

*Id.,* commentary (footnote omitted).

We therefore remand this matter to the trial court for purposes of affording Currie a right of allocution.

*By the Court.*—Order affirmed in part, reversed in part and cause remanded.

SCOTT, C.J. *(concurring in part, dissenting in part).* I concur in the opinion of the majority except as to the issue dealing with the authority of the trial court to use the summary procedure for contempt. In my view, the statute is clear and only becomes ambiguous when the majority insists upon reading the statute

to allow the court to ignore Currie's constitutional rights on the facts of this case. I do not dispute that Currie's conduct falls within the definition of contempt in sec. 785.01(1), Stats. The only question is whether the judge had the authority to proceed summarily and deny Currie protection of the fundamental constitutional rights provided for in sec. 783.03(1), Stats.

Section 785.03(2), Stats., authorizes a judge to impose punitive sanctions summarily "*only* for the purpose of *preserving* order in the court *and* protecting the authority and dignity of the court." (Emphasis added.)

The word "preserving" is not defined in ch. 785, Stats., governing contempt. In the absence of a statutory definition, all words are construed according to common and approved usage. Sec. 990.01(1), Stats. The common meaning of such words may be established by using dictionary definitions. *State v. Gilbert,* 115 Wis. 2d 371, 378, 340 N.W.2d 511, 515 (1983). The word "preserve" is defined in Webster's Third New International Dictionary 1794 (1976) as:

> to keep safe from injury, harm, or destruction: guard or defend from evil: protect, save . . . [;] to keep alive, intact, in existence, or from decay . . . [;] to retain in one's possession . . . [;] maintain. . . .

In my view, by its common meaning, the use of the phrase "preserving order" was intended to limit the use of summary contempt to ongoing conduct that cannot be controlled by means other than the immediate imposition of sanctions. For example, summary contempt is properly used when a person, such as a witness, whose presence is required in court, continues to disrupt the proceeding by refusing to obey a lawful order of the court. It is only in this type of situation that

there is justification for the court to "impose the punitive sanction immediately after the contempt of court" as required by the statute. *See* sec. 785.03(2), Stats. The "immediate" imposition of the sanction required by the statute is consistent with limiting the use of the summary procedure to ongoing contempt. The statute requires an "immediate" sanction because of the necessity for action to "[preserve] order in the court" and to protect "the authority and dignity of the court."

The majority finds sec. 785.03(2), Stats., ambiguous and then completely ignores the statute's legislative history in arriving at its meaning. The purpose of engaging in statutory interpretation is to ascertain and give effect to the intent of the legislature. *Ball v. District 4, Area Board,* 117 Wis. 2d 529, 537–38, 345 N.W.2d 389, 394 (1984). When the language of the statute is ambiguous or unclear, this court will examine the scope, history, context, subject matter, and object of the statute in order to discern the legislative intent. *Redevelopment Authority v. Bee Frank, Inc.,* 120 Wis. 2d 402, 409, 355 N.W.2d 240, 244 (1984). An examination of the legislative history of ch. 785, Stats., does not support the majority's broad construction but instead demonstrates an ever-increasing curtailment of a judge's power to suspend a citizen's constitutional rights by use of the summary procedure.

Prior to 1975, the statutes allowed a judge to summarily punish for any "contempt committed in the immediate view and presence of the court. . . ."[1] The pen-

---

[1] Section 256.04, Stats. (1973), provided:

**Contempt punished summarily.** Contempts committed in the immediate view and presence of the court may be punished sum-

alty was limited to thirty days in jail and a fine of $250.[2] A person punished summarily was still subject to prosecution for criminal contempt.[3]

The broad power to use the summary contempt procedure was curtailed by the passage of sec. 256.04, Stats. (1975).[4] While subsec. (1)(a) still allowed the

marily; in other cases the party shall be notified of the accusation and have a reasonable time to make his defense.

[2] Section 256.06, Stats. (1973), provided:

**Punishment for contempt.** Punishment for contempt may be by fine or by imprisonment in the jail of the county where the court may be sitting, or both, in the discretion of the court; but the fine shall in no case exceed the sum of two hundred and fifty dollars nor the imprisonment thirty days; and when any person shall be committed to prison for the nonpayment of any such fine he shall be discharged at the expiration of thirty days.

[3] Section 256.07, Stats. (1973), provided:

**Criminal prosecution for contempt.** Persons punished for a contempt, under ss. 256.03 to 256.05, shall, notwithstanding, be liable to indictment or information for such offense; but the court before which a conviction shall be had on such indictment or information shall, in forming its sentence, take into consideration the punishment before inflicted. Nothing contained in ss. 256.03 to 256.05 shall be construed to extend to proceedings against parties or officers as for any contempt for the purpose of enforcing any civil right or remedy.

[4] Section 256.04, Stats. (1975), provided:

**Procedure in criminal contempts.** (1) SUMMARY PROCEDURE. (a) A criminal contempt may be punished summarily if the judge certifies on the record that the judge has seen or heard the conduct constituting the contempt and that it was committed in the immediate view and presence of the court.

(b) If, in the situation described in par. (a), the court has become personally embroiled with the alleged contemnor or has been attacked in such a way that the personal feelings of the judge could reasonably be expected to have been affected, or has adopted an adversary posture with regard to the alleged contemnor, the court

broad use of the summary procedure, subsec. (1)(b) limited its use when the judge became personally involved. In such situations, the statute provided: "[T]he court may then employ the summary contempt procedure *only immediately* after the allegedly contemptuous behavior has taken place, *if necessary to preserve the order* of the court and protect the authority of the court." (Emphasis added.)

Nonsummary contempt under subsec. (2) of sec. 256.04, Stats. (1975), only allowed the "same judge" to preside with the defendant's consent. It also retained the protection of certain constitutional rights for the defendant in addition to allowing him the right of "substitution of judge."

In 1979, the legislature once again revised the statutes in regard to contempt of court by creating ch. 785,

---

may then employ the summary contempt procedure only immediately after the allegedly contemptuous behavior has taken place, if necessary to preserve the order of the court and protect the authority of the court.

(2) NONSUMMARY PROCEDURE. (a) In all contempt situations other than those described in sub. (1), there shall be a nonsummary procedure conducted by a different judge, unless the defendant consents to the same judge.

(b) A nonsummary criminal contempt shall be prosecuted on notice. Such proceeding shall be prosecuted by the district attorney, the attorney general or an attorney specially appointed by the court for that purpose. On a verified petition setting forth the essential facts constituting the criminal contempt charged and described as such, on information and belief, the court may take jurisdiction of the special proceeding of criminal contempt and issue the necessary process of order to show cause or warrant for arrest. The defendant is entitled to a reasonable time for the preparation of the defense, right to bail, substitution of judge, and is presumed innocent until proven guilty beyond a reasonable doubt to the satisfaction of all jurors. Upon a verdict or finding of guilty the court shall sign and enter of record an order reciting the facts and fixing the punishment.

Stats., as it now exists. Once again, under sec. 785.03(1)(b), Stats.,[5] a defendant facing a punitive sanction via a nonsummary procedure has the right of substitution of judge. In addition, the defendant may prevent a judge who is personally involved from presiding over the contempt proceeding. While protection of the rights of the defendant and the procedure for conducting nonsummary contempt are in all major respects the same as under the previous statute, sec. 785.03(2) regulating the use of summary procedure is significantly changed.[6]

Old sec. 256.04, Stats. (1975), still allowed for the general use of summary contempt for acts taking place in the presence of the court, except when the judge was personally involved. In such situations, the judge could

---

[5] Section 785.03(1)(b), Stats., provides:

(b) *Punitive sanction.* The district attorney of a county, the attorney general or a special prosecutor appointed by the court may seek the imposition of a punitive sanction by issuing a complaint charging a person with contempt of court and reciting the sanction sought to be imposed. The district attorney, attorney general or special prosecutor may issue the complaint on his or her own initiative or on the request of a party to an action or proceeding in a court or of the judge presiding in an action or proceeding. The complaint shall be processed under chs. 967 to 973. If the contempt alleged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the trial of the contempt unless the person charged consents to the judge presiding at the trial.

[6] Section 785.03(2), Stats., provides:

(2) SUMMARY PROCEDURE. The judge presiding in an action or proceeding may impose a punitive sanction upon a person who commits a contempt of court in the actual presence of the court. The judge shall impose the punitive sanction immediately after the contempt of court and only for the purpose of preserving order in the court and protecting the authority and dignity of the court.

act only "if necessary to preserve the order of the court and protect the authority of the court." The new sec. 785.03(2), Stats., now limits the use of the summary procedure to the latter situation, i.e., where it is necessary for preservation of order and protection of the court's authority and dignity.

The legislative history unquestionably demonstrates a pattern of curtailing the power of a judge to use summary contempt.[7] Before the 1975 revision of the statute, a judge could summarily punish a defendant for any contemptuous act committed in the presence of the court. The revised statute prohibited a judge from proceeding summarily when the judge was personally involved. In such situations, the judge could only proceed summarily in order to preserve the order of the court. Under the present statute, the judge may only use the summary procedure when the conduct is in the court's presence and only to preserve the order and protect the dignity of the court.

The majority reads the "preserving order" language of sec. 785.03(2), Stats., as referring to the effect of the contemptuous conduct on the order of the court at the time of the occurrence of the conduct and not as to the time of the finding of contempt or imposition of the sanctions. The majority concludes, "If Currie's argument prevailed, the summary imposition of punitive sanctions could rarely, if ever, occur. . . ." P.13. In my view, this is exactly what the legislature intended.

---

[7] Neither party challenges the power of the legislature to prescribe the procedure to be followed in contempt proceedings. Wisconsin has long recognized this legislative authority. *See* Comment, *Contempt—Control by the Courts and by the Legislature in Wisconsin,* 9 Wis. L. Rev. 278, 281 (1934). *See also In re B.L.P.,* 118 Wis. 2d 33, 345 N.W.2d 510 (Ct. App. 1984).

When a judge uses the power to proceed against a citizen summarily, the judge is acting in the role of policeman, prosecutor, judge and jury. The exercise of this extraordinary power by one person denies citizens, such as Currie, the very protections the legislature has reserved for them in sec. 785.03(1)(b), Stats., to wit, all of the rights reserved to criminal defendants under the state's criminal code contained in chs. 967 to 973, Stats. Obviously, such rights as the right to notice, to the presumption of innocence, to a neutral and detached magistrate, to a trial by jury, and to be represented by counsel should not be denied to citizens except in the most extreme circumstances. Chapter 785, Stats., recognizes the importance of these fundamental rights and allows for exceptions only when there is no other alternative.

The legislature has recognized the necessity to limit the power of the judge to literally suspend the constitution of the State of Wisconsin and of the United States to situations where it is absolutely necessary to the continued operation of the court. In my view, the statute only allows for summary contempt in those situations where the record will support a finding by the judge that it was necessary for the ongoing proceedings of the court. In situations where the normal punitive sanctions are sufficient, however, summary sanctions simply cannot be imposed. Judges should not search for opportunities to suspend citizens' constitutional rights; rather, they should seek to protect them.

In *Harris v. United States,* 382 U.S. 162 (1965), the defendant had summarily been found in contempt of court pursuant to Rule 42(a) of the Federal Rules of Criminal Procedure for failing to answer questions in a grand jury proceeding. Rule 42(a) reads as follows:

A criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the judge and entered of record.

*Harris* at 164; Fed. R. Crim. P. 42(a).

While Rule 42(a) is more akin to sec. 256.04, Stats. (1975), the predecessor of sec. 785.03(2), Stats., the analysis of the *Harris* Court is helpful.

Rule 42(a) was reserved "for exceptional circumstances," *Brown v. United States,* 359 US 41, 54, 3 L ed 2d 609, 619, 79 S Ct 539 (dissenting opinion), such as acts threatening the judge or disrupting a hearing or obstructing court proceedings. Ibid. We reach that conclusion in light of "the concern long demonstrated by both Congress and this Court over the possible abuse of the contempt power," ibid., and in light of the wording of the Rule. Summary contempt is for "misbehavior" . . . in the "actual presence of the court." Then speedy punishment may be necessary in order to achieve "summary vindication of the court's dignity and authority." . . . But swiftness was not a prerequisite of justice here. Delay necessary for a hearing would not imperil the grand jury proceedings.

*Id.* at 164 (citations omitted). The *Harris* Court concluded:

We are concerned solely with "procedural regularity" which, as Mr. Justice Brandeis said in *Burdeau v. McDowell,* 256 US 465, 477, 65 L ed 1048, 1051, 41 S Ct 574, 13 ALR 1159 (dissenting), has been "a large factor" in the development of our liberty. Rule 42(b) prescribes the "procedural regularity" for all

contempts in the federal regime except those un-
usual situations envisioned by Rule 42(a) where in-
stant action is necessary to protect the judicial insti-
tution itself.

*Id.* at 167 (footnote omitted).

On the morning of July 24, 1984, Bruce Currie was
ordered into court to perform his duty as a juror on a
criminal case. A few hours later, he had been found
guilty of contempt and was facing a fine of $1,000 or,
in default thereof, forty-five days in the county jail.
The constitutional rights of the defendant who was on
trial were protected, and the defendant's case was ad-
journed to guarantee his right to a fair trial. Currie was
denied notice, the presumption of innocence, the right
to a jury trial, the right to counsel, and, last but not
least, a requested adjournment. The record reveals no
finding of necessity to preserve the order in the court,
and the facts of record would not support such a find-
ing. Currie addressed one prejudicial comment to the
defendant which was the basis for the court's terminat-
ing the proceedings. There is nothing in the record
which indicates that when confronted by the court Cur-
rie was other than respectful to the court or that he
was challenging the authority of the court in any man-
ner. There was no threat to the judge's control of the
courtroom which required "summary vindication of the
court's dignity *and* authority." This was not one of
those "unusual situations . . . where instant action is
necessary to protect the judicial institution itself." I
would reverse and remand with directions to vacate
the finding of contempt. The trial court may still pro-
ceed to file a complaint under sec. 785.03(1)(b), Stats.,
if deemed appropriate.

In this case, the trial judge was understandably frustrated by the effect of Currie's conduct on the trial. The trial judge properly acted to protect the defendant's right to a fair trial. In my view, the legislature has protected the right to a fair trial for all defendants in contempt actions, save those whose continued contemptuous conduct prevents the court from proceeding in an orderly manner to dispose of the business coming before it. While requiring the trial judge to respect a defendant's constitutional rights may result in inconvenience to the court, I do not believe that such a result can fairly be termed "absurd." I believe that the majority's interpretation is inconsistent with the fundamental policy recently stated in *In re B.L.P.,* 118 Wis. 2d 33, 39, 345 N.W.2d 510, 514 (Ct. App. 1984), where we stated, "Although following the procedures required in ch. 785, Stats., regarding the exercise of a court's contempt power is much more cumbersome and time consuming, it is not the policy of the law to choose expedience over due process when, in fact, due process should be afforded."